EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| José Hernández Badillo y otros<br>      Apelantes-Recurridos<br><br>             v.<br><br>Municipio de Aguadilla<br>      Apelado-Peticionario | Apelación<br><br>2001 TSPR 78 |

Número del Caso: AC-2000-34

Fecha: 5/junio/2001

Tribunal de Circuito de Apelaciones:
                         Circuito Regional IV


Juez Ponente:
                         Hon. Roberto L. Córdova Arone

Abogados de Parte Peticionaria:
                         Lcdo. Pablo B. Rivera Díaz
                         Lcdo. Lourdes T. Pagán

Abogado de la Parte Recurrida:
                         Lcdo. Edgardo Mesonero Hernández


Materia: Revisión Administrativa



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

José Hernández Badillo
y otros

    Apelantes-recurridos

        vs.                    AC-2000-34        APELACION

Municipio de Aguadilla

    Apelado-peticionario

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 5 de junio de 2001

José Hernández Badillo y Hermelinda Fantauzzi Martínez, empleados regulares, presentaron recursos de apelación --de forma independiente-- ante la Junta de Apelaciones del Sistema de Administración de Personal --en adelante JASAP--, impugnando la determinación del Municipio de Aguadilla de cesantearlos de las posiciones que ocupaban.[1] Estas acciones fueron __consolidadas__ con otras, presentadas en fecha posterior, por dieciséis (16) empleados regulares de dicho Municipio, quienes también habían sido

---

[1] Tales acciones fueron presentadas los días 16 y 24 de julio de 1997 respectivamente.

cesanteados. Por otro lado, el 11 de septiembre de 1997, Alberto Méndez Pabón, igualmente empleado regular del Municipio, acudió ante JASAP por los mismos hechos. No obstante, su acción no fue consolidada con las anteriores.

Las cesantías decretadas alegadamente estuvieron basadas en el cierre de los Centros de Diagnóstico y Tratamiento del Municipio de Aguadilla. Ello debido a que dichos centros alegadamente habían perdido su utilidad a raíz de la implantación de la Reforma de Salud Estatal en dicho Municipio

En síntesis, los empleados adujeron en las referidas apelaciones que: (1) el Municipio incidió al no implantar un Plan de Cesantía conforme a derecho; (2) no existen fundamentos para decretar las cesantías; (3) el Municipio ha contratado varios empleados que realizan labores afines a las que ellos efectuaban; (4) el presupuesto del Municipio ha tenido un incremento sustancial; (5) ninguno de ellos tomaba decisiones de política pública; y (6) cinco de los empleados no estaban adscritos al Departamento de Salud Municipal. Por su parte, el Municipio negó todos los hechos esenciales alegados en las apelaciones, sosteniendo que el criterio utilizado para decretar las cesantías fue la antigüedad de los empleados.

El 22 de noviembre de 1999, JASAP emitió resolución en los casos consolidados declarando con lugar las apelaciones presentadas. Además, ordenó la reinstalación de los apelantes y el pago de los haberes dejados de

percibir; dispuso que se descontara de dichos haberes cualquier compensación recibida por los apelantes por servicios prestados en el sector público. Posteriormente, el 17 de enero de 2000, dictó resolución en cuanto a la apelación presentada por Alberto Méndez Pabón ordenando su reinstalación y el pago de los haberes dejados de percibir.

En diciembre de 1999, el Municipio presentó moción de reconsideración en relación con la resolución emitida por JASAP en los casos consolidados, la cual fue declarada no ha lugar por dicha agencia. Inconforme, el 17 de febrero de 2000 el Municipio apeló ante el Tribunal de Circuito de Apelaciones sosteniendo que erró el foro administrativo al no ordenar el descuento de todos los salarios percibidos independientemente de su procedencia, y al no resolver expresamente que varios de los apelantes no tenían derecho a la reinstalación. De igual forma, el 22 de febrero de 2000, presentó un recurso de revisión contra la resolución emitida en el caso de Alberto Méndez Pabón, en el cual alegó que erró JASAP al no ordenar el descuento de todos los salarios percibidos, independientemente de su procedencia, al momento de determinar la cuantía de los haberes dejados de percibir.

El foro apelativo intermedio consolidó los recursos presentados. Finalmente, el 5 de abril de 2000, dictó sentencia modificando lo dispuesto por JASAP respecto al derecho de los empleados a recibir los haberes dejados de

percibir. Dispuso el Tribunal de Circuito "que el Municipio de Aguadilla pued[e] descontar a los empleados <u>todos</u> los haberes y sueldos devengados, si alguno, durante el período en que estuvieron cesanteados, provenientes de labores realizadas en el Gobierno [...], <u>así como también los salarios devengados en la empresa privada</u>". (Enfasis suplido.)

De esta sentencia recurrieron ante este Tribunal los empleados municipales alegando, como único señalamiento de error, que incidió

> "el Tribunal de Circuito de Apelaciones al decidir que el Municipio de Aguadilla puede descontar a los Apelantes, de los salarios y beneficios marginales que tiene que pagarles con carácter retroactivo, cualquier cantidad de dinero que por concepto de salarios ellos hayan devengado de trabajo realizado en la empresa privada durante los treinta meses en que estuvieron fuera del servicio público, como consecuencia de las ilegales cesantías".

El 23 de junio de 2000, emitimos Resolución <u>expidiendo</u> el recurso. <u>Resolvemos</u>.

I

Mediante la Ley Núm. 81 de 30 de agosto de 1991, conocida como Ley de Municipios Autónomos, los municipios quedaron excluidos de las disposiciones de la Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1301 *et seq.*, <u>excepto</u> en cuanto a lo establecido sobre la Junta de Apelaciones del Sistema de Administración de Personal, en adelante JASAP, 21 L.P.R.A. sec. 4577. Por consiguiente,

dicho foro administrativo mantuvo jurisdicción apelativa sobre los reclamos de los empleados municipales. Véase Rivera Ortiz v. Mun. de Guaynabo, 141 D.P.R. 257, 266 (1996).

La jurisdicción apelativa de JASAP se extiende a aquellos casos de destitución o suspensión de empleo y sueldo de un empleado de carrera. 3 L.P.R.A. sec. 1394(1). En los casos de destitución, cuando la decisión emitida por JASAP sea favorable al empleado, dicha agencia deberá ordenar su restitución y el pago total, o parcial, de los salarios dejados de percibir por éste desde la fecha de efectividad de la destitución, más los beneficios marginales a que hubiese tenido derecho. 3 L.P.R.A. sec. 1397.

En Estrella v. Mun. de Luquillo, 113 D.P.R. 617, 619 (1982), este Tribunal resolvió que, al momento de determinar la cuantía a otorgarse por concepto de salarios dejados de percibir, JASAP vendrá obligada a descontar "todos los haberes y sueldos devengados, si alguno, durante el período en que [el empleado estuvo cesanteado], provenientes de labores realizadas en el Gobierno, agencias, municipalidades o cualesquiera otras instrumentalidades públicas". (Enfasis nuestro.) Esto de conformidad con el Artículo VI, Sección 10 de nuestra Constitución, el cual establece, entre otras cosas, que "[n]inguna persona podrá recibir sueldo por más de un

cargo o empleo <u>en el gobierno de Puerto Rico</u>". (Énfasis nuestro.)[2]

Como podemos notar, el caso de <u>Estrella</u> v. <u>Mun. de Luquillo</u>, ante, realmente <u>no</u> resuelve la controversia hoy ante nuestra consideración, ya que ésta se refiere a salarios <u>provenientes de trabajos realizados en la empresa privada</u>. De igual forma, la Ley de Personal del Servicio Público <u>tampoco</u> dispone respecto a las cantidades que habrán de descontarse de la cuantía otorgada por concepto de salarios dejados de percibir.

## II

En el ámbito laboral --en la empresa privada-- hemos resuelto que los daños concedidos a un obrero, en virtud de la Ley de Salario Mínimo de 1941, serán unos <u>puramente nominales</u> en aquellos casos en los cuales dicho obrero ha obtenido otro empleo con un salario sustancialmente igual o en casos en que éste tiene otros ingresos, incluyendo los beneficios de seguro social. <u>Berríos</u> v. <u>Eastern Sugar Associates</u>, 85 D.P.R. 119, 130 (1962). Incluso, hemos establecido que en aquellas situaciones en que un estatuto autoriza expresamente la reposición con abono de la paga que el obrero hubiese devengado, el patrono podrá deducir

---

[2] En <u>Estrella</u>, ante, la Opinión mayoritaria se <u>limitó</u> a discutir la procedencia de la deducción de los ingresos percibidos por el empleado en el sector público, <u>no</u> mencionado, en absoluto, la procedencia o no de la deducción de los ingresos provenientes de la empresa privada.

<u>cualquier suma</u> que el obrero perjudicado hubiese percibido por su trabajo con otros patronos. *Id.*

A estos efectos, en <u>Rivera</u> v. <u>Junta Relaciones del Trabajo</u>, 70 D.P.R. 5, 13-14 (1949), interpretando la Ley Núm. 130 de 8 de mayo de 1945, 29 L.P.R.A. sec. 61 *et seq.*, conocida como Ley de Relaciones del Trabajo de Puerto Rico, reconocimos al patrono el derecho a "deducir del importe adeudado a sus empleados cualesquiera sumas devengadas de otros patronos para quienes trabajaron durante el período que no trabajaron para el [patrono] peticionario, <u>con motivo de las prácticas ilícitas del trabajo por parte del patrono</u>". (Enfasis suplido.) <u>Ello por tratarse de una medida reparadora y no punitiva</u>. *Id.* pág. 13.[3]

En esencia, "[p]ara que un remedio sea reparador, la acción afirmativa que se ordena 'debe propender a garantizar a los empleados aquellos derechos que el estatuto consagra'". (Cita omitida.) <u>J.R.T.</u> v. <u>A.F.F.</u>, 108 D.P.R. 818, 828 (1979).[4] Sobre este particular, en <u>J.R.T.</u> v. <u>Ceide</u>, 89 D.P.R. 674, 684-86 (1963), expresamos:

---

[3] La Ley de Relaciones del Trabajo dispone que la Junta de Relaciones del Trabajo ordenará, en aquellos casos en que determine que ha ocurrido una práctica ilícita de trabajo, el cese y desista de dicha práctica ilícita. Además, tomará las acciones afirmativas correspondientes, "incluyendo, pero no limitándose a la reposición de empleados, abonándose o no la paga suspendida". 29 L.P.R.A. sec. 70(1)(b).

[4] Un estatuto reparador o remedial es aquél que establece "acciones o mecanismos dirigidos a reparar [actos] ilícitos o proteger derechos preexistentes". Guillermo Cabanellas y Eleanor C. Hoague, <u>Diccionario Jurídico</u>

"En idénticos términos, al referirse al estatuto local, dijimos en *Rivera* v. *Junta de Relaciones del Trabajo*, 70 D.P.R. 5, 13 (1949), que 'Nuestra Ley es reparadora, no punitiva.' [...] Sin embargo, es necesario explorar más detenidamente el verdadero significado de esta calificación de "ley reparadora" para comprender su verdadero alcance. Así, en el mismo caso de *Consolidated Edison*, supra, el Tribunal Supremo federal, señala que la facultad de la Junta para ordenar acción afirmativa 'debe ejercitarse en auxilio de su autoridad para restringir violaciones y como *un medio para erradicar o evitar las consecuencias de la violación* [la práctica ilícita en que se ha incurrido] *cuando las consecuencias son de tal naturaleza que frustran los propósitos de la Ley.*' El concepto de estatuto reparador fue explicado más claramente en *Republic Steel Corp.* v. *National Labor Rel. Bd.*, 311 U.S. 7, 10 (1940), cuando después de reiterar que la Ley es esencialmente reparadora, se añade: 'No consiste de un programa penal que declare que las prácticas ilícitas de trabajo enumeradas constituyan delitos. La Ley no establece penalidades o multas para la reparación de derechos públicos ni provee para indemnizar por las pérdidas sufridas por la comunidad en contradistinción con la protección y compensación a los empleados' (pág. 10). Insistentemente se refiere a que la acción afirmativa debe propender a garantizar a los empleados aquellos derechos que el estatuto consagra, entre los cuales se destacan el de negociar colectivamente, y como corolario indispensable, el de disfrutar de los beneficios que se logren a través de la negociación. La acción afirmativa que contempla la Ley se dirige a restituir al empleado afectado por la comisión de las prácticas ilícitas a la misma posición que ocuparía de no haberse observado la conducta detrimental. Entre estas medidas la que típicamente ilustra lo expuesto es el abono de los beneficios dejados de recibir, pero para evitar cualquier carácter punitivo, se le deducen las cantidades netas recibidas por el empleado en otras actividades, *Rivera* v. *Junta*

---

Español/Inglés Butterworths, Tomo 1, Butterworth Legal Publishers, 1991, pág. 531. Por su parte, el Black's Law Dictionary dispone: "Remedial law. A law providing a means to enforce rights or redress injuries". Black's Law Dictionary, 7ma ed., West Group, 1999, pág. 1296. Véanse también Birnholz v. 44 Wall Street Fund, Inc., 880 F.2d 335, 339 (1989); St. John's Village I v. Department of State, 497 So.2d 990, 993 (1986).

> *Relaciones del Trabajo*, 70 D.P.R. 5, 13 (1949);
> *Phelps Dodge Corp.* v. *N.L.R.B.*, 313 U.S. 177
> (1941); *Bon Hennings Logging Company* v. *N.L.R.B.*,
> 308 F.2d 548 (9th Cir. 1962); *National Labor
> Relations Bd.* v. *Suburban Lumber Co.*, 121 F.2d
> 829 (3d Cir. 1941); Nota 45 Minn. L. Rev. 609,
> 633 (1961)." (Enfasis suplido.)

Los casos antes citados fueron resueltos fundamentalmente en situaciones donde estaba involucrado un empleado de la empresa privada. No obstante, y a pesar de que a estos empleados -contrario a los empleados públicos- no les aplica el principio de mérito, concluimos en el día de hoy que los principios esbozados en dichos casos son de aplicación a las disposiciones sobre JASAP de la Ley de Personal del Servicio Público. Ello pues, la decisión tomada en cada uno de éstos estuvo basada, en esencia, en el propósito de la medida bajo consideración.

Por lo tanto, al interpretar los remedios concedidos por la Ley de Personal del Servicio Público igualmente es nuestro deber "considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarl[os] y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener". Morell Corrada v. Ojeda, res. el 20 de julio de 2000, 2000 TSPR 120; Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759, 766. Esto es, si el propósito de la Ley de Personal del Servicio Público a los efectos de ordenar el pago total, o parcial, de los salarios dejados de percibir efectivamente es de naturaleza remedial o reparadora,

entonces procederá que se descuente cualquier suma recibida por el empleado por concepto de trabajos obtenidos y realizados durante el periodo que estuvo cesanteado.

## III

Según indicáramos previamente, la Sección 7.17 de la Ley de Personal del Servicio Público dispone que en los casos de destitución, cuando la decisión emitida sea favorable al empleado, JASAP <u>ordenará</u>, entre otras cosas, el pago total o parcial de los salarios dejados de percibir por éste. 3 L.P.R.A. sec. 1397. Dicha disposición <u>tiene su origen</u> en la Sección 31 de la antigua Ley de Personal, la cual, entre otras cosas, disponía: "Si la decisión de la Junta fuere favorable al funcionario o empleado querellado, la autoridad nominadora le restituirá a su puesto [....] <u>La Junta [de Personal] autorizará el</u> <u>pago total o parcial que habría correspondido al empleado</u> <u>o funcionario restituido a partir de la fecha en que fue</u> <u>destituido por la autoridad nominadora</u>". (Énfasis nuestro.) 3 L.P.R.A. sec. 671.

Sobre este particular, en <u>Soto Bosque</u> v. <u>Junta de</u> <u>Personal</u>, 85 D.P.R. 814, 816 (1962), indicamos que "el propósito de ordenar el pago de los sueldos es <u>restituir</u> <u>al empleado por los beneficios que dejó de percibir por la</u> <u>actuación injustificada de la autoridad nominadora</u>". (Énfasis nuestro).

A pesar de que esta interpretación fue hecha bajo la antigua Ley de Personal, la misma se extiende a lo dispuesto por la vigente Sección 7.17, pues, dicha medida proviene de, y es análoga a, la Sección 31. Además, del historial legislativo de la Ley de Personal del Servicio Público de 1975, surge claramente que JASAP -organismo encargado de poner en vigor lo establecido por la Sección 7.17- fue creada con el fin de reemplazar la antigua Junta de Personal en cuanto a sus funciones cuasi judiciales. Informe de las Comisiones de Gobierno y de Derechos Civiles del Senado de Puerto Rico sobre el P. del S. 1428 de 30 de septiembre de 1975, pág. 29.[5]

---

[5] Mediante la aprobación de la Ley de Personal del Servicio Público de 1975, el legislador separó las funciones de la Junta de Personal, delegando en JASAP las funciones *cuasi* judiciales que ésta realizaba, y en el Director de la Oficina Central las facultades para reglamentar y supervisar la aplicación del principio de mérito. Tal distribución respondió, en primer lugar, al deseo del legislador de separar las funciones cuasi judiciales de las cuasi legislativas. En segundo lugar, el legislador consideró necesario crear un organismo que tuviese el tiempo suficiente "para atender con rapidez el número de apelaciones que pueda llegar como resultado de haber triplicado el número de empleados bajo su supervisión directa", limitando sus funciones a actuaciones cuasi judiciales, e integrando el mismo por funcionarios a tiempo completo. Informe de las Comisiones de Gobierno y de Derechos Civiles del Senado de Puerto Rico sobre el P. del S. 1428 de 30 de septiembre de 1975, pág. 29; 3 L.P.R.A. sec. 1384.

Bajo la antigua Ley de Personal, los miembros de la Junta de Personal se reunían periódicamente, pues no eran empleados a tiempo completo. 3 L.P.R.A. sec. 644. Debido a ello, el cúmulo de casos en apelación era de tal magnitud que la resolución de los mismos tomaba más tiempo del que era razonable y deseable. Informe sobre el P. del S. 1428, ante, págs. 25-26.

En síntesis, los remedios provistos por la Sección 7.17 de la Ley de Personal del Servicio Público son de naturaleza reparadora o remedial. En forma alguna dicha medida pretende "castigar" al "patrono" por la actuación ilegal. Por el contrario, la acción afirmativa va dirigida a restituir al empleado afectado a la misma posición que ocuparía de no haberse incurrido en la conducta ilegal.[6]

A tenor con esta interpretación, concluimos que en aquellos casos en que un empleado público despedido ilegalmente haya recibido ingresos, por concepto de trabajos obtenidos y realizados durante el periodo que estuvo cesanteado, el patrono podrá deducir dichos ingresos de la cuantía a otorgarse por concepto de salarios dejados de percibir, independientemente de cuál es la fuente de donde provienen los mismos.

De esta manera, damos cumplimiento al propósito perseguido por el legislador a través de esta medida, permitiendo al empleado público recibir la cantidad que, efectivamente, dejó de recibir como resultado de la actuación del patrono. De lo contrario, estaríamos penalizando al "patrono", actuación no autorizada por la Ley de Personal del Servicio Público.[7]

---

[6] Además, los remedios provistos por la Ley de Personal del Servicio Público son impuestos "a la agencia y no necesariamente al causante del daño". Cintrón v. E.L.A., 127 D.P.R. 582, 594 (1990).

[7] La Ley de Personal del Servicio Público solamente contempla las siguientes penalidades:

"Sec. 1431. Penalidades

Adviértase que las penalidades no se presumen, sino que deben aparecer de forma clara. Véase: Salgado v. Tribunal Superior, 92 D.P.R. 367, 372 (1965); J.R.T. v. Vigilantes, Inc., 125 D.P.R. 581, 596 (1990). Por lo tanto, "en ausencia de estatuto, convenio colectivo o contrato particular que así lo reconozca, no procede la imposición de penalidades en casos de reposición por despido". J.R.T. v. A.F.F., ante, pág. 829.[8]

---

Cualquier persona que intencionalmente violare cualquiera de las disposiciones de este capítulo, o de las normas aprobadas en virtud del mismo, a menos que los actos realizados estén castigados por alguna otra disposición legal, será culpable de delito menos grave (*misdemeanor*) y convicta que fuere será castigada con multa no menor de veinticinco (25) dólares ni mayor de quinientos (500) dólares, o cárcel por un término que no excederá de noventa (90) días o ambas penas a discreción del tribunal." 3 L.P.R.A. sec. 1431.

[8] Asimismo, resolver de otra forma implicaría la concesión de una doble compensación. No obstante reconocer que en Puerto Rico prevalece la doctrina de fuente colateral, la misma no aplica al caso de autos. Dicha doctrina establece, como regla general, que "el causante de un daño está impedido de deducir del importe de la indemnización que se le ha impuesto, la compensación o beneficios que el perjudicado haya recibido de una tercera persona o entidad". Nieves Cruz v. U.P.R., res. el 31 de mayo de 2000, 2000 TSPR 78, 2000 JTS 91, pág. 1209.

Esta norma está fundamentada en el principio de que el causante de un daño no debe beneficiarse de lo que el perjudicado haya recibido por la liberalidad de otros, ni de los servicios públicos extendidos por la comunidad a los necesitados. Sin embargo, la misma no ha de aplicarse mecánicamente. *Id*. En este sentido, y consciente del problema de la doble compensación, en Futurama Import Corp. v. Trans Caribbean, 104 D.P.R. 609 (1976), señalamos que en cada caso deberá examinarse el origen y propósito del beneficio colateral en cuestión, para decidir si éste se deduce, o no, de la indemnización. *Id*.

Finalmente, debemos aclarar que tal resultado <u>no</u> implica que el empleado público al cual se le han violado sus derechos, quede desvalido de cualquier otro remedio provisto por ley, pues, además de la acción ante JASAP -la cual se limita a la reinstalación y al pago de los haberes dejados de percibir-, podrá acudir al foro judicial para reclamar los daños que la actuación ilegal le haya causado. Véase: <u>Cintrón</u> v. <u>E.L.A.</u>, 127 D.P.R. 582, 594-95 (1990).

Por los fundamentos antes expuestos, procede <u>confirmar</u> la decisión emitida por el Tribunal de Circuito de Apelaciones, a los efectos de autorizar al Municipio de Aguadilla a <u>deducir</u> de la cuantía concedida por concepto de salarios dejados de percibir, aquellos ingresos recibidos por trabajos obtenidos y realizados durante el periodo que duró la cesantía, <u>independientemente de si dichos ingresos provienen de fuentes gubernamentales o privadas</u>.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

En el caso ante nuestra consideración, no estamos ante beneficios recibidos por la liberalidad de terceros ni de servicios públicos extendidos a personas necesitadas, sino de ingresos derivados de un empleo.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

José Hernández Badillo
y otros

    Apelantes

       vs.                                    AC-2000-34          APELACION

Municipio de Aguadilla

    Apelados

SENTENCIA

San Juan, Puerto Rico, a 5 de junio de 2001

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso, a los efectos de autorizar al Municipio de Aguadilla a deducir de la cuantía concedida por concepto de salarios dejados de percibir, aquellos ingresos recibidos por trabajos obtenidos y realizados durante el periodo que duró la cesantía, independientemente de si dichos ingresos provienen de fuentes gubernamentales o privadas.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente.

                    Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


José Hernández Badillo
y otros

    Apelantes-Recurridos

       vs.                              AC-2000-34    APELACION

Municipio de Aguadilla

    Apelado-Peticionario


Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 5 de junio de 2001.


En el caso de autos, la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) revocó por improcedentes las cesantías de unos empleados públicos decretadas por el Municipio de Aguadilla, y ordenó la reinstalación a sus cargos de los empleados cesanteados. JASAP también dispuso que se le pagaran a dichos empleados los haberes dejados de percibir durante el tiempo en que estuvieron fuera de su empleo, descontándose de dichos haberes cualquier compensación recibida por los cesanteados por servicios prestados por ellos en el **sector público** mientras estuvieron cesanteados. El Tribunal de Circuito de Apelaciones modificó la orden de JASAP y dispuso que de los                                                        haberes

referidos también debía descontarse cualquier salario devengado de la **empresa privada**.

Una mayoría del Tribunal confirma aquí el dictamen del foro apelativo, amparándose para ello en su interpretación de la Sección 7.17 de la Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1397. Como no estoy conforme con tal interpretación, **que limita seriamente el remedio ordenado por JASAP a favor de unos trabajadores que fueron cesanteados ilícitamente**, disiento. Veamos.

II

La disposición en cuestión aquí ordena en lo pertinente que, en casos como el de autos, si la decisión de JASAP es favorable al empleado, JASAP no sólo debe ordenar la restitución del empleado a su puesto sino que debe ordenar además:

> el pago total o parcial de los salarios dejados de percibir por éste desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que éste hubiese tenido derecho.

Como puede observarse del claro texto de esta disposición, **nada se dice allí** sobre descontar de los salarios a pagarse cualquier compensación que el empleado público despedido ilícitamente hubiese recibido mientras estuvo destituido. Conforme, pues, sólo al sentido literal de la disposición referida, **no procedería descuento alguno de los haberes dejados de recibir** mientras el empleado estuvo ilícitamente cesanteado, porque dicha disposición no lo ordena. Harto conocido es el principio de hermenéutica de que, al interpretar un estatuto, éste no debe ser restringido añadiéndole limitaciones que no aparecen de su texto. Lasalle v. Junta Dir. ACAA, 140 D.P.R. 694 (1996); Ferretería Matos Inc. v. P.R. Tel. Co., 110 D.P.R. 153 (1980); Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966); Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964).

En vista, pues, de que el texto de la sección 7.17 referida no incluye descuento alguno, es menester examinar su historial legislativo

para ver si de éste surge de algún modo tal limitación. Esta disposición fue legislada en 1975, mediante la Ley Núm. 5 de 14 de octubre de ese año. Al momento en que fue aprobada por la Asamblea Legislativa existían decisiones judiciales recientes pertinentes al asunto que dicha disposición atiende, que deben examinarse porque ayudan a esclarecer la intención del legislador al poner en vigor la disposición referida.

Dos decisiones de este Tribunal son particularmente pertinentes. En ambas la cuestión ante nos era similar a la que nos concierne en el caso de autos. En ambas se dilucidó si, al reinstalarse a su empleo a un maestro que había sido despedido ilegalmente y pagársele el sueldo dejado de percibir mientras estuvo despedido, era necesario descontar de tal sueldo los ingresos recibidos de otros empleos durante ese tiempo. **En ambos casos este Tribunal claramente resolvió que no procedía tal descuento**. En Municipio de Coamo v. Tribunal Superior, 99 D.P.R. 932 (1971)[9] explicamos de este modo por qué no procedía el descuento en cuestión, a la pág. 941:

> **El remedio en estos casos tiene un propósito que va más allá del interés de indemnizar a la víctima. Sirve, además, como un freno para evitar los despidos ilegales y la perturbación que ello puede ocasionar a una sana administración pública.**

Del mismo modo, en Torres Cartagena v. Srio. de Instrucción, 94 D.P.R. 690 (1967), resolvimos que no procedía descontarse los ingresos que obtuviera el maestro mientras estuvo suspendido ilegalmente y lo justificamos de este modo, a las págs. 694-695:

> **El derecho a recibir el sueldo completo es la garantía que tiene el maestro para evitar que se le formulen cargos arbitrariamente. La mera formulación afecta la reputación de una persona. El legislador quiso proteger al maestro de esta posibilidad. Por otro lado el maestro necesita de un ingreso para poder sufragar los gastos de su subsistir. No puede pretenderse que se cruce de brazos a esperar el resultado final de los cargos que se le formulan. Ciertamente se destruiría la garantía que pagar el sueldo completo conlleva, si estableciéramos como regla que se descontarán los ingresos**

---

[9] Posteriormente, en Estrella v. Municipio de Luquillo, 113 D.P.R. 617 (1982), revocamos este caso por fundamentos constitucionales, según se indica más adelante en el texto de esta Opinión. Ello en nada altera lo relativo a la intención legislativa, que es lo que interesa aquí.

**que obtuviera el maestro mientras estuvo suspendido ilegalmente.**

Las dos decisiones nuestras aludidas antes formaban parte del contexto jurídico dentro del cual se aprobó la sección 7.17 de la Ley de Personal de Servicio Público que aquí nos concierne. Dichas dos decisiones las emitimos al interpretar otra disposición estatutaria que existía entonces, que era igual a la del caso de autos, **pero que aplicaba sólo a los maestros**. En efecto, la Ley Núm. 115 de 30 de junio de 1965 disponía que:

> si la orden de . . . separación del maestro fuera revocada por la Junta, el Tribunal Superior de Puerto Rico o cualquier otro Tribunal Apelativo, el maestro que haya estado suspendido tendrá derecho a recobrar los sueldos que haya dejado de percibir durante el período de suspensión.

En Torres Cartagena v. Srio. Instrucción, supra, a la pág. 695 explicamos que ésta disposición fue legislada en 1965 para acoger "nuestra regla jurisprudencial" formulada en el caso de Rosario v. Gallardo, Comisionado, 62 D.P.R. 266 (1943) en el que habíamos resuelto que un maestro ilícitamente despedido tenía derecho a que se le pagara el **sueldo completo** dejado de percibir durante el período en que estuvo cesanteado. Explicamos así mismo en Torres Cartagena v. Srio. Instrucción, supra, que la disposición legislada en 1965 acogiendo nuestro dictamen previo no dispuso nada respecto a que se descontaría del sueldo referido lo obtenido por el maestro durante el tiempo de la cesantía, por lo que **nada podía descontarse** por tal concepto del sueldo a pagarse. Finalmente, resolvimos expresamente en Torres Cartagena v. Srio. Instrucción, supra, a la pág. 697, que esta norma sobre el pago del sueldo completo, sin los descuentos en cuestión, se extendía a los maestros, **y que con respecto a otros empleados públicos** la Asamblea Legislativa debía "hacer la determinación final." Expresamente llamamos la atención a que se trataba de una norma de política pública "que debía establecerse mediante legislación."

Lo que este Tribunal señaló en <u>Torres Cartagena v. Srio.</u> <u>Instrucción</u>, <u>supra</u>, fue precisamente lo que hizo la Asamblea Legislativa al aprobar la sección 7.17 de la nueva Ley de Personal de 1975. Se incorporó la norma expuesta antes por este Tribunal en las decisiones judiciales referidas, **y se hizo sin ordenar descuento alguno** del salario a pagarse. El legislador no dispuso tal descuento, a pesar de que la jurisprudencia referida había girado precisamente en torno a si éste procedía o no.

Reiteradamente hemos resuelto que cuando el legislador redacta un estatuto, debe presumirse que conocía los análisis judiciales anteriores sobre el asunto y que si no alteró la normativa judicial previa es porque el legislador la consideró correcta. Véase, <u>Plaza Ríos v.</u> <u>F.S.E.</u>, 110 D.P.R. 727 (1981); <u>Martínez v. Junta de Planificación</u>, 109 D.P.R. 839 (1980); <u>Com. J. Fernández v. Srio. de Hacienda</u>, 95 D.P.R. 728, 733 (1968); <u>Pérez Vega v. Tribunal Superior</u>, 93 D.P.R. 749, 758 (1966); <u>Arroyo Merino v. Junta Azucarera</u>, 89 D.P.R. 622, 637-638 (1963); <u>De Castro v. Junta de Comisionados</u>, 59 D.P.R. 676, 683-684 (1942). A la luz de este conocido principio de hermenéutica y en vista del historial reseñado antes, es evidente que el legislador no incluyó en la sección 7.17 en cuestión lenguaje alguno sobre descuentos salariales, **porque tuvo la intención de que ninguno se hiciese.** Su intención, mas bien, fue que al empleado público despedido ilícitamente se le pagase **los salarios completos** que había dejado de percibir durante el tiempo en que estuvo cesanteado.

Así se aplicaba la disposición aludida hasta que en <u>Estrella v.</u> <u>Mun. de Luquillo</u>, 113 D.P.R. 617 (1982) este Tribunal dispuso, **sobre** **fundamentos de derecho constitucional**, que a los salarios en cuestión tenían que descontarse los sueldos que hubieran devengado **en el sector** **público** los empleados públicos durante el período del despido ilegal. Esta decisión no negó la intención legislativa descrita antes. Más bien se limitó a señalar que en virtud de lo dispuesto por el Art. VI Sec.10 de nuestra Constitución, tal intención legislativa era **inoperante** con

respecto a los sueldos recibidos en otros cargos públicos mientras el empleado estuvo cesanteado. Es de notar que uno de los miembros del Tribunal disintió del dictamen mayoritario, no porque creyese que su resultado estuviese equivocado, sino porque entendía el juez disidente que la deducción que debía ordenarse era de los ingresos percibidos por los cesanteados "tanto de fuentes gubernamentales <u>como de empresa privada</u>." Es evidente, pues, que la mayoría de este Tribunal entendía que los descuentos referidos sólo se extendían a los ingresos derivados de fondos públicos.

III

La mayoría también fundamenta su dictamen en el caso de autos en jurisprudencia nuestra referente a situaciones en las cuales **<u>empleados de la empresa privada</u>** fueron restituidos a sus empleos y se les dedujo del pago de los beneficios dejados de percibir las cantidades netas obtenidas por éstos en los trabajos que tuvieron mientras estuvieron ilícitamente cesanteados. Sin embargo, resulta que dicha jurisprudencia no es de **modo alguno aplicable al caso de autos**. Al acudir a dicha jurisprudencia la mayoría parece haber olvidado que ésta surgió al amparo de leyes laborales que son de aplicación sólo al sector privado, mientras que el caso de autos surge al amparo de la Ley de Personal de Servicio Público. No puede fundamentarse el dictamen de autos en jurisprudencia relativa a la legislación laboral que le aplica sólo a las empresas privadas debido a que lo que aquí nos concierne es la legislación relativa al sector público. Ya antes hemos resuelto que la Ley de Personal referida **es de carácter esencialmente distinto** a la de la tradicional legislación laboral relativa al sector privado. <u>Ortiz v. Municipio de Lajas</u>, 2001 JTS 51. Por eso, la jurisprudencia relativa a éste no puede extenderse a las situaciones que se rigen por la legislación que atañe al sector público. No tiene sentido que este Foro resuelva por un lado que el esquema normativo laboral del sector público es esencialmente distinto al del sector privado, para poco

después equipararlos por analogía, sobre todo para negarles derechos a los empleados públicos. Se trata de una instancia de grave inconsistencia normativa y conceptual, en la cual este Foro no debiera incurrir, sobre todo cuando la inconsistencia referida no es para hacerle justicia a unos trabajadores sino más bien para coartarle derechos.

## IV

A la luz de todo lo anterior, pues, me parece que la única interpretación correcta de la sección 7.17 en cuestión es que no procede descontar de los salarios a pagarse al empleado público despedido ilegalmente aquellos ingresos que éste haya recibido de la empresa privada mientras estaba cesanteado del cargo púbico. Tal es la evidente intención legislativa, que nos obliga. Resolver de otra forma no sólo va en contra de los más fundamentales principios de hermenéutica y de nuestra propia jurisprudencia sino que resulta en una injusticia contra el empleado público que ya sufrió el vejamen del despido ilegal. Además, socava un importante disuasivo para que los patronos gubernamentales respeten la ley.

La mayoría opta por otro curso de acción, que considero muy desacertado. Otra vez más la mayoría opta por una interpretación estatutaria errónea, que socava injustificadamente la condición y los derechos de unos trabajadores. Por ello, yo disiento.


Jaime B. Fuster Berlingeri
Juez Asociado