Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| RAÚL ZAMBRANA GARCÍA<br><br>Recurrido<br><br><br>v.<br><br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Peticionario | KLCE202400375 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: K AC2013-0694<br><br>Sobre: Ejecución de Sentencia |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**


**RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece el Estado Libre Asociado de Puerto Rico, en adelante el Gobierno o el peticionario, por sí y en representación del Departamento de Salud y de la Oficina de Gerencia y Presupuesto, quien solicita que revoquemos la *Sentencia Enmendada* emitida el 22 de diciembre de 2023 y notificada el 10 de enero de 2024. Mediante la misma, el Tribunal de Primera Instancia, Sala Superior de San Juan, en adelante TPI, declaró ha lugar la *Moción Conforme a la Regla 36*, presentada por el doctor Raúl Zambrana García, en adelante el Dr. Zambrana o el recurrido; no ha lugar la *Moción en Oposición a la Solicitud de Sentencia Sumaria Radicada por la Parte Demandante*, presentada por el Gobierno; y ordenó a este último pagar la cantidad de $448,391.94, por concepto de salarios dejados de devengar más intereses.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *Certiorari.*

Número Identificador
RES2024_____

**-I-**

La controversia ante nuestra consideración tiene su origen en una *Demanda en Ejecución de Sentencia*, presentada por el Dr. Zambrana, el 9 de septiembre de 2013.[1]

En lo aquí pertinente, el recurrido presentó una *Moción Conforme Regla 36 de Procedimiento Civil*. Arguyó, en síntesis, que el Gobierno le adeuda la suma de $448,391.94 porque desde la fecha del despido hasta su reinstalación, ni su práctica privada ni sus ingresos aumentaron por trabajo realizado luego de la cesantía en la misma cantidad de lo que hubiese trabajado para el peticionario.[2] En todo caso, el peso de probar la procedencia de cualquier descuento corresponde al Gobierno[3] y este "no tiene evidencia para probar" que el recurrido "dedicó al segundo empleo luego de la cesantía", alguna cantidad de horas adicionales, y que estas correspondan a la cantidad de horas dedicadas al empleo del cual fue cesanteado[4].

Por su parte, el peticionario presentó una *Moción en Oposición a la Solicitud de Sentencia Sumaria*. Alegó que no procedía dictar sentencia sumaria porque "existe una controversia real y sustancial sobre hechos materiales del caso que impiden que el caso de autos sea adjudicado por la vía sumaria".[5] Esto es así, porque "para realizar dichos cómputos es fundamental cierta información, la cual no ha sido provista [por el Dr. Zambrana] no empece [*sic*.] a que de manera oportuna le fue solicitada desde los inicios procesales de este caso

---

[1] Apéndice del peticionario, págs. 1-5.
[2] *Id.*, pág. 357.
[3] *Id.*
[4] *Id.* pág. 355.
[5] *Id.* pág. 405.

en primera instancia en la fase de descubrimiento de prueba"[6], ello aunque es al recurrido "a quien corresponde probar su alegación"[7].

Así las cosas, el TPI declaró no ha lugar *Moción Conforme Regla 36 de Procedimiento Civil*. No obstante, determinó que los siguientes hechos no están controversia:

1. El Dr. Zambrana García trabajó para el Departamento de Salud como médico internista y reumatólogo desde el 1978. Tan pronto comenzó se le nombró jefe del Departamento de Reumatología.

2. Sus responsabilidades como Jefe del Departamento de Reumatología en el Hospital Regional de Ponce incluían ofrecer cuidados médicos directos y funciones académicas para la formación de nuevos especialistas en reumatología. Esto le requería trabajar de 7:00am hasta 3:00pm y estar disponible las veinticuatro horas del día durante los siete días de la semana, para atender pacientes que no pudieran ser atendidos por el residente de guardia.

3. Durante el tiempo que trabajó en el Departamento de Salud, el Dr. Zambrana García siempre tuvo dos fuentes de ingreso simultáneas antes de su despido: su salario como Médico-Jefe de Departamento en el Hospital Regional de Ponce y sus ingresos provenientes de su práctica en su consultorio privado.

4. El Departamento de Salud fue la autoridad nominadora que cesanteó al Dr. Zambrana García efectivo el 1 de julio de 2000.

5. El Dr. Zambrana García presentó la apelación CES-00-06-199 ante la entonces Junta Apelativa de Servicio Público, ahora conocida como la Comisión Apelativa de Servicio Público (CASP).

6. El 25 de marzo de 2011, la CASP ordenó al Departamento de Salud a reinstalar en su empleo al Dr. Zambrana García y a pagarle los haberes dejados de percibir hasta la fecha en que se le restituyera en su puesto, conforme a lo resuelto en *Hernández v. Mun. De Aguadilla*, 154 DPR 199 (2001). La Resolución fue notificada el 9 de julio de 2013.

---

[6] *Id.*
[7] *Id.*, pág. 407.

7. El Departamento de Salud reinstaló al Dr. Zambrana García a su puesto efectivo el 15 de noviembre de 2011.

8. El Departamento de Salud calculó en $490,211.50 la cifra de salarios dejados de devengar por el Dr. Zambrana García desde el 1 de julio del 2000 hasta el 15 de noviembre de 2011. Las partes estipularon las tablas preparadas por el Departamento de Salud de las cuales surge esta cifra. Esta cifra considera los aumentos de sueldo que el Dr. Zambrana García hubiera recibido como empleado del Departamento de Salud durante casi once años que estuvo cesanteado.

9. El 17 de octubre de 2012, el Departamento de Salud emitió un cheque a favor del Dr. Zambrana García por $28,532.70 en concepto de pago del balance de licencia por vacaciones acumulados en exceso.

10. En la misma fecha, el Departamento de Salud emitió un cheque a favor del Dr. Zambrana García por $13,287.42 en concepto de pago del balance de licencia por enfermedad acumulada en exceso.

11. El 26 de noviembre de 2012, el Departamento de Salud emitió un cheque a favor de Zambrana García por $8,613.42 en concepto de bonos de navidad dejados de percibir.

12. Hasta la fecha de hoy, el Departamento de Salud no ha pagado dinero alguno al Dr. Zambrana García en concepto de salarios dejados de percibir.[8]

En consideración a lo anterior el foro sentenciador determinó, que existe controversia sobre un hecho esencial, a saber, "la cuantía que debe pagar el Departamento de Salud por concepto de haberes dejados de percibir durante el tiempo que el Dr. Zambrana García estuvo cesanteado", por lo cual, "no procede dictar sentencia sumaria en esta etapa de los procedimientos".[9]

Inconforme, el recurrido presentó una *Solicitud de Reconsideración*. Adujo que corresponde dictar sentencia sumaria a su favor porque el Gobierno no tiene prueba de "la cantidad de horas adicionales – si alguna que el

---

[8] *Id.*, págs. 427-428.
[9] *Id.*, pág. 434.

empleado dedicó a su segundo empleo, luego de la cesantía y que correspondía a la cantidad de horas que el empleado dedicaba a su empleo del cual fue cesanteado".[10]

Por su parte, el peticionario presentó una *Réplica a Moción en Solicitud de Reconsideración Radicada por la Parte Demandante – En Cumplimiento de Orden*. En esta argumentó que lo esencial en este caso es determinar tanto la cantidad total de los ingresos dejados de percibir por el empleado por razón de su cesantía, así como la cantidad total de los ingresos interinos generados durante el periodo que duró su cesantía.[11] A su entender, la fórmula para el cómputo de las cantidades en controversia tiene que ser razonable dentro de las circunstancias de cada caso.[12] Contrario a la contención del Dr. Zambrana, para el Gobierno la cantidad de horas trabajadas es solo una herramienta de trabajo, un elemento o factor que contribuye a determinar las cantidades en controversia en casos de empleados cuyos salarios se establecen en función de las horas trabajadas.[13] Finalmente, para el Gobierno lo que está en controversia es la información financiera sobre los ingresos que generó el recurrido en su segundo trabajo, información que está bajo el control del Dr. Zambrana y que conforme a nuestro ordenamiento probatorio, este tiene la obligación de proveer.[14]

El TPI acogió la *Solicitud de Reconsideración* del Dr. Zambrana y dictó la *Sentencia Enmendada*, cuya revisión se solicita.[15] Mediante la misma, determinó,

---

[10] *Id.*, pág. 438.
[11] *Id.*, pág. 459.
[12] *Id.*, pág. 460.
[13] *Id.*, pág. 461.
[14] *Id.*, pág. 466.
[15] *Id.*, págs. 474-481.

conforme a la Regla 110 de Evidencia (32 LPRA Ap. VI, R. 110), que el Gobierno tiene el peso de probar las horas adicionales, si algunas, que el Dr. Zambrana dedicó a su segundo empleo, luego de su despido, y que correspondan a la cantidad de horas que el recurrido dedicaba al empleo del cual fue cesanteado. Debido a que el peticionario no tiene esa prueba, el TPI razonó: "procede que se dicte sentencia sumaria concediendo al Dr. Zambrana García el remedio reclamado, que consiste en el pago total de los $448,391.94 más intereses que el ELA le adeude al demandante [recurrido]".[16]

Insatisfecho, el peticionario solicitó reconsideración[17], a la que se opuso el recurrido[18] y que el TPI declaró no ha lugar[19].

En desacuerdo, el peticionario presentó una *Petición de Certiorari* en la que invoca la comisión del siguiente error:

> ERRÓ EL FORO PRIMARIO AL DICTAR SENTENCIA SUMARIA A FAVOR DE LA PARTE DEMANDANTE ANTE LA EXISTENCIA DE CONTROVERSIAS SOBRE HECHOS MATERIALES QUE IMPEDÍAN DISPONER DE LA RECLAMACIÓN MEDIANTE EL MECANISMO DE SENTENCIA SUMARIA EN ESTA ETAPA DE LOS PROCEDIMIENTOS.

Luego de examinar los escritos de las partes y los documentos que los acompañan, estamos en posición de resolver.

-II-

A.

Como cuestión de umbral, la Regla 52.1 de Procedimiento Civil establece el alcance de la revisión discrecional de las resoluciones u órdenes

---

[16] *Id.*, pág. 480.
[17] *Id.*, págs. 482-504.
[18] *Id.*, págs. 505-555.
[19] *Id.*, págs. 556-557.

interlocutorias emitidas por el Tribunal de Primera Instancia en los siguientes términos:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[…].[20]

**1.**

Rebasado el umbral establecido en la Regla 52.1 de Procedimiento Civil, *supra*, corresponde a este tribunal intermedio determinar si procede revisar la determinación interlocutoria recurrida.

A esos efectos, el auto de *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior.[21] Distinto al recurso de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de manera discrecional, por tratarse de ordinario de asuntos interlocutorios.[22] Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera.[23]

---

[20] Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.
[21] *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *García v. Padró*, 165 DPR 324, 334 (2005).
[22] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Medina Nazario v. McNeil Healthcare LLC*, *supra*, pág. 729; *García v. Padró*, *supra*, pág. 334.
[23] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 847; *Municipio v. JRO Construction*, 201 DPR 703, 711-712 (2019); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

Por su parte, la Regla 40 del Reglamento de este Tribunal establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*. Sobre el particular dispone:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[24]

**B.**

En *Zambrana García v. ELA*, el Tribunal Supremo de Puerto Rico estableció la fórmula de computar la compensación equivalente a los haberes dejados de percibir, cuando se restituye a su puesto a un empleado que, antes de la cesantía, generaba un segundo ingreso, y que, durante la cesantía, optó por dedicarse a la práctica profesional de la cual obtenía el segundo ingreso. En lo aquí pertinente, determinó:

> Cuando el galeno fue cesanteado, ya tenía un segundo empleo (su práctica privada), el cual

---

[24] *Torres González v. Zaragoza Meléndez*, *supra*, pág. 848; *Municipio v. JRO Construction*, *supra*; 4 LPRA Ap. XXII-B, R. 40.

continuó realizando durante el periodo en que estuvo cesanteado. Conforme con lo anterior, para calcular lo que el hospital adeuda al doctor Zambrana aplicaremos la fórmula mencionada. Primero, se computará el ingreso que el galeno generó en su práctica privada tras su despido y que, a su vez, corresponderían a la cantidad de horas que habría trabajado en el hospital de no haber sido cesanteado (I). Al hacer ese cálculo no se incluirá la compensación que el doctor Zambrana recibió por razón de la práctica privada correspondiente a la cantidad de horas que ya dedicaba a ese trabajo antes de la cesantía. Al producto de este cálculo se le restarán los gastos en que este incurrió para realizar la práctica (G). El resultado de esta operación nos brinda el ingreso neto. Luego, al salario total que el galeno dejó de devengar mientras estuvo cesanteado (S) se le sustrae el ingreso neto (IN). Entonces, de existir algún remanente, este será la cantidad que el hospital le pagará al doctor Zambrana (CT).[25]

## -III-

En la medida en que se solicita la revisión de una determinación interlocutoria emitida después de dictarse la sentencia, este Tribunal Intermedio tiene facultad para evaluar su corrección.[26]

En esencia, el peticionario alega que erró el TPI al disponer sumariamente de la controversia ante nuestra consideración. Esto es así, porque "aun persiste una controversia sobre un hecho material esencial, a saber, la cuantía que debe pagar el Departamento de la Salud por concepto de haberes dejados de percibir durante el tiempo que el Dr. Zambrana estuvo cesanteado". A su entender, ello impide "computar los haberes dejados de percibir del Dr. Zambrana García bajo la fórmula establecida por el Tribunal Supremo de Puerto Rico en este mismo caso".

Por su parte, el recurrido arguye que procede desestimar el recurso de *certiorari* por falta de jurisdicción, por tardío. En su opinión, ello obedece a

---

[25] *Zambrana García v. ELA*, 204 DPR 328, 340-341 (2020).
[26] *IG Builders et al. v. BBVAPR,* supra.

que la moción de reconsideración de la *Sentencia Enmendada,* presentada por el peticionario, no cumplió con las especificidades de la Regla 47 de Procedimiento Civil,[27] a saber, no interrumpió el término para recurrir en alzada ante este tribunal intermedio.

Ahora bien, luego de revisar cuidadosamente los escritos de las partes y los documentos que los acompañan, consideramos que ni el remedio ni la disposición de la determinación recurrida son contrarios a derecho. Regla 40 (A) del Reglamento del Tribunal de Apelaciones, *supra*. Además, no encontramos ninguna situación al amparo de los restantes criterios de la Regla 40 que justifiquen la expedición del auto.

**-IV-**

Por los fundamentos previamente expuestos, se deniega la expedición del auto de *Certiorari.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Bonilla Ortiz concurre sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[27] 32 LPRA Ap. V, R. 47.