Opinión de conformidad en parte y disidente en parte emitida por el
Juez Asociado Señor Estrella Martínez.
Por entender que este Tribunal actuó correctamente al sostener la determinación de los foros recurridos en cuanto a que las cesantías efectuadas por el Departamento de Salud están revestidas de ilegalidad, estoy conforme. Empero, ante al curso de acción seguido, no me queda más que disentir y expresarme en torno a cuáles son los remedios que amparan a los empleados cesanteados en contravención a lo dispuesto en las normas aplicables a este caso, a saber: la derogada Ley de Personal del Servicio Público de Puerto Rico de 1975, infra, y el Reglamento Núm. 2186 de 30 de noviembre de 1996, conocido como el Reglamento de Personal: Áreas Esenciales al Principio Mérito.
Planteada la controversia en esos términos, procedemos a exponer el trasfondo fáctico que la suscita.
*54 I
Para fines de la década de los años noventa, el Departamento de Salud (Departamento) dio paso a un proceso de privatización de las instituciones médico-hospitalarias del Gobierno de Puerto Rico como parte de la implantación de la Reforma de Salud. En vista de ello, ocurrieron un sinnúmero de cambios organizacionales, entre los que sobresale la desintegración del Departamento y la Administración de Facilidades y Servicios de la Salud (AFASS). Para ese entonces, la Sra. Maggie Acevedo Sepúlveda y otros empleados (cesanteados o recurridos) ocupaban puestos regulares de carrera en el Hospital Regional de Ponce y en el Centro Médico de Mayagüez. Como consecuencia del proceso de privatización, los recurridos fueron cesanteados de sus empleos.
Así las cosas, el 20 de julio de 2000, los cesanteados de ambos centros hospitalarios presentaron un recurso de apelación sobre impugnación de cesantías ante la entonces Junta de Apelaciones del Sistema de Administración de Personal (JASAP).(1) Los empleados del Hospital Regional de Ponce reclamaron que mediante cartas notificadas el 31 de mayo de 2000, la Dra. Carmen Feliciano Melecio, entonces Secretaria de Salud y Directora Ejecutiva de la AFASS, les notificó que sus cesantías serían efectivas al 30 de junio de 2000, en virtud de la legislación que privatizaba los centros de salud del Gobierno de Puerto Rico. Por su parte, los recurridos que ocupaban puestos en el Centro Médico de Mayagüez argüyeron que recibieron una carta de cesantía *55 por medio de la cual se les indicaba que iban a quedar cesanteados el 15 de octubre de 2000, de acuerdo con la ley que disolvía a la AFASS.
Ante el mencionado foro administrativo, los recurridos alegaron que el Departamento había efectuado el proceso de cesantías incumpliendo con lo dispuesto en la ley. En particular, argüyeron que las cesantías se realizaron sin considerar el criterio objetivo de tiempo en el servicio, sin otorgar adecuada publicación al Plan de Cesantías, sin ponerlo a disposición de los empleados y sin mencionarlo en las cartas de cesantías. Asimismo, alegaron que el Departamento no les permitió inspeccionar el orden de prelación para asegurarse de que la antigüedad y clasificación de sus correspondientes puestos era la correcta; que no se les orientó de forma adecuada sobre sus derechos y beneficios marginales; que no remitió las listas de los cesanteados a otras agencias del Gobierno, y que hubo selectividad en términos de los procesos de reubicación que se efectuaron, entre otras alegaciones.
Los cesanteados adujeron, también, que no existía tal Plan de Cesantías ni Registro de Antigüedad y Prelación. Por todo ello, solicitaron que se les reinstalara en sus puestos o, en la alternativa, que se les reubicara en puestos de similar jerarquía. De igual forma, reclamaron la nulidad de las cesantías y, como resultado, el pago de los salarios y haberes dejados de percibir durante ese período.
Luego de varios trámites procesales, el 1 de marzo de 2004, la JASAP determinó que las cesantías se habían realizado conforme a la legislación aplicable, por lo que denegó la apelación de los recurridos. En desacuerdo con esta determinación, los cesanteados presentaron un recurso de revisión judicial ante el Tribunal de Apelaciones. El 30 de junio de 2005, el foro apelativo revocó el dictamen de la JASAP y ordenó la celebración de una vista evidenciaría. El foro intermedio fundamentó su determinación en el ar *56 gumento de que a los cesanteados se les menoscabó su derecho a ser oídos y a examinar y confrontar la prueba en su contra.
Conforme lo ordenado por el Tribunal de Apelaciones, la JASAP celebró la vista el 7 de julio de 2011. Durante ésta, se escuchó el testimonio de la Sra. Luz Vázquez Correa, quien declaró por parte del Departamento. En su testimonio, la señora Vázquez Correa alegó que la AFASS preparó un listado, que incluía el nombre y otros datos de los empleados, y lo entregó en la oficina de Recursos Humanos de las diferentes regiones. Esto, con el propósito de que los empleados de Recursos Humanos fueran quienes verificaran la información con el empleado en cada región. La señora Vázquez Correa adujo, además, que se creó un banco de talentos y que no se siguió el Plan de Cesantías que existía en el Departamento. Así pues, declaró que las cesantías se efectuaron según el orden de la venta de los hospitales, eludiendo así utilizar el criterio de antigüedad de los empleados. Por su parte, como prueba de refutación, los recurridos impugnaron lo testificado por parte de la señora Vázquez Correa mediante la presentación de varios testigos.
Así las cosas, el 14 de diciembre de 2011, la Comisión Apelativa del Servicio Público (CASP) declaró “ha lugar” la apelación de los recurridos, con excepción del reclamo de la Sra. Zenaida Rodríguez Cardona, ya que la evidencia demostró que ésta había rechazado una oferta de empleo ofrecida por el privatizador. En su dictamen, el foro administrativo concluyó que el proceso de cesantías fue efectuado de manera ilegal. Por ello, ordenó la reinstalación de los cesanteados junto con el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a los que los recurridos tuviesen derecho en virtud del período de cesantía ilegal. A su vez, determinó que al pago de los salarios dejados de percibir se le debía de apli *57 car la normativa jurisprudencial establecida en Hernández v. Mun. de Aguadilla, 154 DPR 199 (2001).
No conformes con la Resolución emitida por la CASP, tanto el Departamento como la señora Rodríguez Cardona solicitaron, por separado, reconsideración ante ese foro. De esta forma, el 8 de febrero de 2012, la CASP modificó su dictamen dejando sin efecto la orden de reinstalar a los cesanteados. Es decir, ese foro solo mantuvo como remedio el pago de los ingresos dejados de percibir y los beneficios marginales a los que hubiesen tenido derecho durante el tiempo de la cesantía ilegal; esto, con la reducción de los haberes percibidos en otros trabajos conforme a nuestros pronunciamientos anteriores. Por su parte, la solicitud de reconsideración presentada por Rodríguez Cardona fue denegada.
Inconformes con el proceder de la CASP, todas las partes presentaron recurso de revisión administrativa ante el Tribunal de Apelaciones. Luego de consolidados los casos y de otros trámites procesales, el 30 de octubre de 2012, el foro apelativo intermedio emitió una Sentencia mediante la cual modificó la Resolución de la CASP a los únicos efectos de ordenar la reinstalación de los empleados cesanteados. En desacuerdo con tal determinación, el Departamento recurre ante este Tribunal mediante el recurso de certiorari y señala la comisión de los errores siguientes:
Erró el Tribunal de Apelaciones al determinar que la conclusión de la CASP de que las cesantías fueron ilegales surgió de la evidencia sustancial que obra en el expediente, analizada a la luz de las disposiciones legales y reglamentarias que no se siguieron por Salud.
Erró el Tribunal de Apelaciones al confirmar el remedio del pago de los haberes dejados de percibir a casi todos los apelantes aunque no existe evidencia en el expediente administrativo respecto a cuáles de ellos fueron reclutados por la privatizadora adquiriente o no aceptaron el trabajo ofrecido por esta.
*58 Erró el Tribunal de Apelaciones al modificar la resolución recurrida para añadir la reinstalación a los empleados cesanteados a otras unidades o facilidades de Salud. Petición de certiorari, pág. 3.
Ante el cuadro táctico expuesto, esta Curia identifica correctamente la ilegalidad que caracterizó las cesantías efectuadas por el Departamento. Ahora bien, lamentable e inexplicablemente concede a los que fueron objeto de las actuaciones ilícitas del Departamento solo una parte de los remedios que la derogada Ley Núm. 5 de 14 de octubre de 1975 (Ley Núm. 5 o Ley de Personal),(2) confería a los empleados y que reiteradamente reconoció este Tribunal durante su vigencia.
II
Para lograr la implantación de la Reforma de Salud, se aprobó legislación encaminada a privatizar los servicios de salud ofrecidos por el Estado. El proceso de privatización de las instituciones médico-hospitalarias tenía como objetivo la creación de un seguro de salud para la población médico-indigente de Puerto Rico. Para alcanzar ese propósito, se comenzó la venta gradual y el traspaso de las instalaciones médicas pertenecientes al Departamento a entidades privadas.
Conjuntamente con el proceso de privatización de las instalaciones de salud públicas, se reconocieron unos derechos y se abrió paso a procesos de reubicación de los empleados que laboraban en las dependencias médico-hospitalarias adscritas al Departamento. Para atender estas circunstancias, el Art. 19 de la Ley Núm. 190-1996 establecía el procedimiento que han de seguir en cuanto a los empleados que laboraban en la instalación pública al momento de concretarse la privatización y que no pasaran a *59 ser empleados de la entidad contratante. Con respecto a estos empleados, el artículo disponía que “se les garantizará sus derechos a tono con lo dispuesto en el inciso (d), Artículo 6 de la Ley Núm. 5 de 6 de abril de 1993, conocida como la ‘Ley de Reorganización Ejecutiva de 1993’ ”.(3) El referido Art. 6 limitaba los planes de reorganización del Gobierno disponiendo, en lo pertinente, que ninguna reorganización tendría el efecto de “[a]fectar el empleo, derechos y permanencia de los empleados de la agencia o la agencias reorganizadas, incluyendo los derechos dentro del sistema de pensión, retiro o ahorros”.(4)
No obstante, la Ley Núm. 31-1997 (Ley Núm. 31), enmendó el Art. 19 de la Ley Núm. 190. La enmienda tuvo el efecto de aclarar que, con respecto a aquellos empleados del Departamento que estuvieran trabajando en alguna de sus instituciones al momento de la privatización y que no fueran contratados por la entidad privada, “el Departamento velará por el cumplimiento de las disposiciones de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, y otras leyes y reglamentos aplicables”. (Énfasis suplido).(5) Es decir, por medio de esta enmienda se descartó dirigirse a la Ley Núm. 5-1993, siendo la Ley de Personal el estatuto rector al que hay que acudir en la búsqueda de los remedios que hoy nos ocupan.
III
Conforme al mandato expreso del legislador, el marco legal por medio del cual se regiría la dinámica y las decisiones con respecto al personal del Departamento era la Ley Núm. 5. Ante esa realidad, resulta imperativo exami *60 nar las disposiciones correspondientes de este estatuto. Veamos.
En lo pertinente al asunto que nos atañe, la Ley Núm. 5 incluía entre sus disposiciones consideraciones respecto a las cesantías de los empleados públicos. Particularmente, en su See. 4.6(6) se establecían las circunstancias particulares en las que se podían decretar las cesantías, a saber:
(6) Se podrán decretar cesantías en el servicio sin que esto se entienda como destitución, en los siguientes casos:
(a) Debido a la eliminación de puestos por falta de trabajo o de fondos, o
En la situación descrita en la cláusula (a) de este inciso la separación del servicio se hará según se establezca mediante reglamento al respecto en el que se tome en consideración entre otros factores el status de los empleados y su antigüedad y el tiempo en servicio. (Enfasis suplido).(6)
Por su parte, la See. 5.18(1), la cual regulaba lo referente a los reingresos, disponía que los empleados que fueran cesanteados como consecuencia de la eliminación de sus puestos “tendrán derecho a que sus nombres se incluyan en el registro de elegibles correspondientes a las clases de puestos que ocupaban con carácter regular u otras similares que envuelvan el mismo nivel de trabajo”.(7) Asimismo, la Ley Núm. 5 también contaba con órdenes remediales para cuando se vieran afectados los derechos de los empleados que hubiesen sido ilegalmente despedidos. En particular, en la Sec. 7.17 se establecía, entre otros aspectos, que:
(1) En los casos en que la Junta resuelva a favor del querellante, dictará las órdenes remediales pertinentes.
(2) En casos de destitución, si la decisión de la Junta es favorable al empleado, ésta deberá ordenar su restitución a su puesto, o a un puesto similar. Asimismo deberá ordenar el pago total o parcial de los salarios dejados de percibir por éste *61 desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que éste hubiese tenido derecho.(8)
En conformidad con los propósitos de la Ley Núm. 5, se aprobó el Reglamento Núm. 2186, conocido como Reglamento de Personal: Áreas Esenciales al Principio de Mérito (Reglamento de Personal o Reglamento). Dicho Reglamento tuvo el propósito de dar cumplimiento al mandato legal. Además, en su Preámbulo se expresarse que que este “instrumenta adecuadamente la nueva ley. Es una defensa, un resguardo al principio de mérito con las disposiciones necesarias para hacerlo efectivo. No es de aplicación teórica y abstracta sino concreta y real”.(9)
En lo que concierne a la controversia ante este Tribunal, el Art. 9, Sec. 9.3, del Reglamento disponía todo lo concerniente al asunto de las cesantías. En particular, la See. 9.3(1) permitía separar del servicio a cualquier empleado cuando se eliminaran puestos debido a la falta de trabajo o fondos. Ahora bien, el Reglamento establecía la forma en que se debía proceder con las cesantías. Así pues, era deber de la autoridad nominadora establecer un método a los efectos de decretar las cesantías. Una vez fuera adoptado el método para decretar las cesantías, era requisito que la autoridad nominadora lo notificara a los empleados.(10)
En cuanto al orden en que debían efectuarse las cesantías, el Reglamento estableció el siguiente: en primer lugar, serían separados los empleados transitorios; en segundo lugar, los probatorios, y en último término, aquellos clasificados como regulares.(11) Además de estas normas, en el Reglamento se desglosaban las guías para determinar el *62 orden de prelación en que se decretarían las cesantías. En ese orden era imperativo tomar en consideración el desempeño de las funciones y el tiempo en el servicio. Según la Sec. 9.3(l)(c), era requerido que la autoridad nominadora notificara por escrito a todo empleado que iba a ser cesanteado con no menos de treinta días de antelación a la fecha cuando habría de quedar cesanteado. Finalmente, el Reglamento dejaba claro que ninguna cesantía iba resultar efectiva a menos que se cumpliera con el mencionado requisito de notificación.(12)
IV
Debemos señalar que se pierde el norte al aducir que este Tribunal nunca ha definido los conceptos de “cesantía” y “destitución”. Ello no ha sido impedimento en el pasado, ni lo es en el presente, para reconocer la procedencia de mantener los remedios obtenidos por los empleados cesanteados ilegalmente. Por lo tanto, no podemos avalar el razonamiento de disponer de la controversia a base de interpretaciones semánticas o analogías que no encuentran apoyo en la legislación aplicable a la controversia ante nos. De hecho, a poco se examine el historial legislativo del estatuto aplicable, tampoco encuentra validez sostener una diferencia entre estos dos conceptos. Es por ello que ante cesantías ilegales, este Tribunal no había titubeado, ni enfrentado impedimento alguno, en conceder todos los remedios provistos en la Sec. 7.17 de la Ley Núm. 5, entre los cuales se incluye la reinstalación en primer término. Examinemos, entonces, nuestros pronunciamientos previos sobre el particular.
En Delbrey v. Municipio de Carolina, 111 DPR 492 (1981), empleados regulares del municipio de Carolina quedaron cesanteados debido a que sus puestos habían *63 sido eliminados por alegada duplicación en las funciones que desempeñaban o por no existir trabajo suficiente para la ejecución de tales funciones. Inconformes con el proceder del municipio, los cesanteados apelaron ante la JASAP alegando que sus despidos incumplieron con las disposiciones de la Ley Núm. 5. El foro administrativo convalidó las cesantías y, oportunamente, el Tribunal de Primera Instancia confirmó ese dictamen. Ante ese cuadro, decidimos expedir el recurso.
Analizada la controversia a la luz de la Ley Núm. 5 y el Reglamento de Personal, este Tribunal concluyó que el municipio de Carolina no cumplió con las normas y procedimientos allí dispuestos. En consecuencia, decretamos que las cesantías de los empleados eran nulas. Ante tal escenario, ordenamos la restitución de los empleados cesanteados.
En Pizarro v. Mun. de Carolina, 112 DPR 822 (1982), decenas de obreros fueron cesanteados por el municipio. Los obreros trabajaban en calidad de jornaleros desempeñándose en labores de mantenimiento y limpieza de carreteras, mecánica, operación de equipo pesado, entre otras. El municipio alegó que las cesantías se debieron a la precaria situación económica que estaba atravesando y al consiguiente sobregiro en términos del aumento de la partida presupuestaria destinada al pago de los jornales.
El foro de instancia determinó que el municipio siguió los criterios de necesidad de servicio y la eficiencia de los empleados en la preparación de la lista de los empleados que habrían de quedar cesanteados. De igual forma, estableció que los jornaleros eran empleados irregulares que, según la antigua Ley Municipal, podían ser cesanteados sin formulación de cargos o sin que hubiese justa causa para ello. Estimó, además, que los despidos eran legales por razón de la difícil situación económica que sufría el municipio. Inconformes con los pronunciamientos del foro primario, los cesanteados acudieron ante este Tribunal.
Luego de resolver que los jornaleros cesanteados eran empleados públicos cobijados por la Ley Núm. 5, procedi *64 mos a examinar si el municipio les había quebrantado los derechos concedidos por la mencionada ley y por el Reglamento de Personal. Determinamos, entonces, que los empleados no podían ser cesanteados en ausencia de un plan de cesantías que considerara la eficiencia y el tiempo en el servicio público. Por encontrarnos ante una situación de política pública general, debemos reproducir nuestras ex-presiones de aquel entonces las cuales llevaban el razonamiento jurídico siguiente:
Independientemente de cuán justificadas pudieran haber estado unas cesantías desde el punto de vista económico, la política pública a favor de la implementación del sistema de mérito exige que haya constancia de que al eliminarse uno o más puestos en una clase se dejarán cesantes y serán retenidas las personas indicadas de acuerdo con los criterios objetivos que el sistema de mérito encarna. Es igualmente vital que todos los empleados públicos posean conocimiento previo del método a seguirse para que puedan defender adecuadamente sus derechos, los cuales son relativos a los derechos de los demás. La ausencia de constancia clara, objetiva y difundida de los criterios para determinar quiénes habrán de quedar cesantes crea inseguridades y siembra dudas no sólo sobre la legitimidad de cada cesantía particular, sino sobre la validez y necesidad de la decisión de decretar cesantías en general. Ello, a su vez, fomenta la profusión de pleitos y causa erosión y disgusto entre los empleados y es contrario a los objetivos de la Asamblea Legislativa en lograr la mayor uniformidad, justicia, equidad, armonía, satisfacción y continuidad, y regularidad de los servicios públicos posibles. íd., págs. 829-830.
Finalmente, nuestro análisis nos llevó a concluir que las cesantías fueron decretadas eludiendo los parámetros establecidos. En consecuencia, determinamos que los cesanteados tenían derecho a ser reempleados y recibir la paga dejada de percibir con los descuentos autorizados en ley.
También tuvimos la oportunidad de expresamos en Navedo v. Mun. de Barceloneta, 113 DPR 421 (1982), en torno a cuáles son los remedios que protegían a los empleados cuando se efectuaban cesantías ilegales. En este caso, los *65 peticionarios fueron despedidos sumariamente por el alcalde del municipio de Barceloneta. Oportunamente, apelaron los despidos ante la JASAP, pero ese foro se negó a asumir jurisdicción para entender en la apelación interpuesta. El Tribunal de Primera Instancia confirmó la actuación de la JASAP por entender erróneamente que la Ley Núm. 75 no aplicaba a los empleados irregulares.
En el citado caso reiteramos que los empleados irregulares estaban protegidos por la mencionada ley. Así pues, determinamos que los despidos efectuados por el alcalde requerían la adopción de un plan de cesantías y que ese plan debía notificarse a los empleados y a los que iban a ser cesanteados. Al no observarse ninguno de estos requisitos, decretamos que las cesantías habían sido nulas y que, por tanto, procedía que los empleados fueran restituidos en sus puestos con los beneficios estatuidos en la Ley Núm. 5. En aquel entonces resolvimos la controversia mediante la siguiente expresión: “[s]e dictará sentencia en que se revoque la del Tribunal Superior y se ordene la reinstalación de los empleados recurrentes con los beneficios establecidos en la Sec. 7.17 de la Ley de Personal del Servicio Público”. (Énfasis suplido). íd., pág. 424.
Luego, en Estrella v. Mun. de Luquillo, 113 DPR 617 (1982), acordamos revisar una sentencia del foro primario por medio de la cual se ordenaba la reposición de ciertos empleados despedidos por el municipio en sus puestos originales. Con mayor peso para sustentar nuestro disenso, debemos señalar que el asunto de la reposición de los empleados ni siquiera fue cuestionado por el municipio.
Por su parte, la controversia en el caso Olivieri Morales v. Pierluisi, 113 DPR 790 (1983), se originó cuando el entonces Secretario de la Vivienda notificó a los recurrentes, todos empleados de carrera, que quedarían cesantes de sus puestos debido a la precaria situación económica de la entonces Corporación de Renovación Urbana y Vivienda (CRUV). Inconformes, los cesanteados presentaron un re *66 curso de injunction y solicitaron la reposición a sus respectivos puestos, junto con la paga y los beneficios atrasados y la compensación por daños. Entre otras cosas, alegaron que la autoridad nominadora no agotó todos los remedios disponibles antes de cesantearlos, tales como ofrecerles descensos o traslados interagenciales. Además, adujeron que no se les notificó el plan de cesantías adoptado, según lo exige la legislación pertinente. El Tribunal de Primera Instancia dictó sentencia declarando “no ha lugar” la demanda de los cesanteados. Enmarcada la controversia principal en el incumplimiento con las disposiciones de la Ley Núm. 5, acordamos revisar.
Luego de analizar la reglamentación aplicable, determinamos que era meritoria la contención de los cesanteados de que se les infringió el debido proceso al incumplir con la notificación que exige la Sec. 9.3(l)(a) del Reglamento de Personal, la cual establecía que el método que se adoptara para decretar las cesantías se tenía que poner en conocimiento de los empleados. La agencia estaba obligada a cumplir rigurosamente con ese trámite. Además, en aquella ocasión concluimos que la agencia tampoco observó el mandato legislativo de adoptar un reglamento por medio del cual se diera fiel cumplimiento al principio de mérito al momento de decretar cesantías. En vista de ello, modificamos la sentencia del TPI a los fines de declarar “con lugar” la demanda de los cesanteados y ordenamos a los demandados a reponerlos como empleados de carrera en el Departamento de Vivienda y en la CRUV, con los sueldos correspondientes. Asimismo, ordenamos el pago de los haberes dejados de percibir durante el tiempo de la cesantía ilegal, con los descuentos pertinentes establecidos para aquel entonces. íd., págs. 800-801.
En el 2001, este Tribunal se enfrentó en Hernández v. Mun. de Aguadilla,, supra, a una controversia muy similar al caso ante nuestra consideración. El caso tuvo su génesis cuando empleados regulares fueron cesanteados de sus *67 puestos en los Centros de Diagnóstico y Tratamiento del municipio de Aguadilla. Se alegó que el motivo para decretar las cesantías fue que los centros habían perdido su utilidad a raíz de la implantación de la Reforma de Salud. En desacuerdo con la actuación del municipio, los empleados presentaron recurso de apelación ante la JASAP, impugnado la determinación de cesantearlos de las posiciones que ocupaban. En su apelación, los cesanteados alegaron, entre otros asuntos, que: (1) el municipio había incidido al no implantar un Plan de Cesantías conforme a derecho; (2) no existían fundamentos para decretar las cesantías; (3) el municipio había contratado varios empleados que realizaban labores afines a las que ellos realizaban, y (4) el presupuesto municipal había tenido un incremento sustancial. Id., pág. 201. El municipio negó todas las alegaciones y sostuvo que el criterio utilizado para decretar las cesantías fue la antigüedad de los empleados.
La JASAP declaró “con lugar” la apelación de los cesanteados, ordenando así su reinstalación y el pago de los haberes dejados de percibir. Oportunamente, el municipio presentó moción de reconsideración, la cual fue declarada “no ha lugar”. Inconforme con ese dictamen, el municipio acudió ante el antiguo Tribunal de Circuito de Apelaciones alegando que la JASAP había errado al no ordenar el descuento de todos los salarios percibidos, independientemente de su procedencia, y al no determinar que varios de los cesanteados no tenían derecho a la reinstalación. El foro apelativo modificó lo dispuesto por la JASAP a los únicos efectos de autorizar al municipio a descontar todos los haberes y sueldos devengados durante el periodo en que los empleados estuvieron cesanteados, provenientes de la-bores realizadas en el Gobierno, así como también los salarios devengados en la empresa privada.
Del dictamen del foro intermedio se concluye que la or-den de reinstalación de los empleados emitida por la JASAP no fue alterada. Así las cosas, los cesanteados acu *68 dieron ante este Tribunal, señalando como único error el que el foro apelativo ordenara descontar de los salarios y beneficios que debía pagarles el municipio, cualquier cantidad de dinero devengada por trabajo realizado en la empresa privada durante el periodo de cesantía ilegal. Por tanto, el asunto de la reinstalación nunca estuvo cuestionado ante este Tribunal.
Luego de analizar el propósito legislativo de la Ley Núm. 5 y examinar las disposiciones de su Sec. 7.17, confirmamos la decisión del antiguo Tribunal de Circuito de Apelaciones y emitimos los siguientes pronunciamientos, a saber:
En síntesis, los remedios provistos por la Sec. 7.17 de la Ley de Personal del Servicio Público, ante, son de naturaleza reparadora o remedial. En forma alguna dicha medida pretende “castigar” al “patrono” por la actuación ilegal. Por el contrario, la acción afirmativa va dirigida a restituir al empleado afectado a la misma posición que ocuparía de no haberse incurrido en la conducta ilegal.
A tenor con esta interpretación, concluimos que en aquellos casos en que un empleado público despedido ilegalmente haya recibido ingresos, por concepto de trabajos obtenidos y realizados durante el periodo que estuvo cesanteado, el patrono podrá deducir dichos ingresos de la cuantía a otorgarse por concepto de salarios dejados de percibir, independientemente de cuál es la fuente de donde provienen los mismos. (Enfasis suplido). íd., págs. 208-209.
Los pronunciamientos jurisprudenciales expuestos fundamentan nuestro disenso y, a su vez, nos permiten reiterar nuestra oposición a refrendar una formulación teórica que intenta discernir entre cesantías y destituciones al amparo de leyes o reglamentos cuya aprobación fue posterior a los hechos ante nos o que en nada se vinculan con el propósito legislativo de la Ley Núm. 5. No hay duda con respecto a cuál era la ley aplicable al momento de suscitarse la controversia que nos ocupa. Recordemos, entonces, que es un principio cardinal de hermenéutica el que los tribunales siempre consideren cuáles fueron los principios *69 perseguidos por la Asamblea Legislativa al interpretar una disposición específica de una ley. Irizarry v. J & J Cons. Prods. Co., Inc., 150 DPR 155, 163 (2000). En mérito de lo anterior, es obligación fundamental de los tribunales imprimirle efectividad a la intención legislativa, propiciando la realización del propósito que persigue la ley.
V
Al amparo del marco estatutario y jurisprudencial ex-puesto, procedemos a resolver la controversia que suscita el presente caso. Para disponer de esta, debemos evaluar si el Departamento de Salud cumplió con la reglamentación aplicable al momento de efectuar las cesantías. De concluir que fueron ilegales, nos corresponde determinar cuáles son los remedios que cobijan a los empleados cesanteados.
Como expusimos, durante la década de los años noventa, el Departamento comenzó un proceso de privatización de las instalaciones médico-hospitalarias pertenecientes al Estado. Como consecuencia, se cesantearon empleados públicos que laboraban tanto con el Departamento como con la AEASS. Así las cosas, los recurridos fueron cesanteados de sus empleos durante el 2000.
Al decretar las cesantías, el Departamento estaba obligado a cumplir con la legislación vigente. Es decir, para que éstas no estuvieran revestidas de ilegalidad, el Departamento debía de ceñirse por lo dispuesto en la Ley Núm. 5 y el Reglamento de Personal, entre otra legislación. Recordemos que la Ley Núm. 31 de 1997, enmendó el Art. 19 de la Ley Núm. 190-1996, a los efectos de establecer que el Departamento debía cumplir con la Ley Núm. 5 en los casos de empleados cesanteados durante el proceso de privatización que no fueran contratados por la entidad privada.
Así pues, conforme a la See. 4.6 de la Ley Núm. 5, para decretar cesantías era imperativo tomar en consideración el estatus de los empleados, su antigüedad y el tiempo en *70 el servicio. De igual forma, la ley establecía que los cesanteados tenían derecho a que sus nombres se incluyeran en un registro de elegibles con respecto a los puestos que ocupaban u otros similares. Además de darle estricto cumplimiento a lo dispuesto en la mencionada ley, no podía ignorarse lo promulgado en el Reglamento de Personal. Ese Reglamento dejaba claro que la autoridad nominadora tenía el deber de adoptar un método para decretar las cesantías y, sobre todo, que era requisito que ese método se notificara a los empleados. Además, determinaba que las cesantías de los empleados debían de efectuarse según un orden de prelación en el cual era necesario tomar en consideración el desempeño de las funciones y el tiempo en el servicio. A su vez, la Ley Núm. 31, en su See. 26, imponía que aquellos empleados que no fueran contratados por el privatizador se incluyeran en un plan de reubicación.
En su comparecencia, el Departamento aduce que cumplió con la normativa vigente al momento de decretar las cesantías. La razón no está de su lado. Si bien sostenemos que el Departamento estaba facultado para cesantear a los empleados de sus respectivos puestos, en virtud de la legislación por medio de la cual se cimentó la Reforma de Salud, dicha agencia no tenía autoridad para anular lo dispuesto en la ley y reglamentación. Luego de examinar la comparecencia de las partes, no albergamos dudas de que el proceso de cesantías se llevó a cabo de forma ilegal. Los hechos nos permiten colegir que el Departamento incumplió tanto con las disposiciones de la Ley Núm. 5 como con lo establecido en el Reglamento Núm. 2186.
Así las cosas, en conformidad con el criterio de este Tribunal, refrendamos la determinación del Tribunal de Apelaciones y de la CASP, reiterando con ello que el proceso de cesantías promovido por el Departamento lleva el estigma de la ilegalidad. Por lo tanto, no podemos avalar ni tolerar el proceder del Departamento. Ello, pues, trastoca los derechos de la clase trabajadora. Concluimos, al igual que lo *71 reconoce esta Curia, que no se cometió el primer error señalado. La evidencia sustancial que obra en el expediente muestra, a todas luces, que las cesantías fueron ilegales.
Ahora bien, ante la realidad de que las cesantías fueron ilegales, procede que este Tribunal conceda la totalidad de los remedios, contemplados en la legislación aplicable, a los perjudicados por las acciones ilegales del Departamento. Nuevamente, según el mandato de la Ley Núm. 31, que enmendó el Art. 19 de la Ley Núm. 190, debemos acudir a las disposiciones de la Ley Núm. 5. Corresponde dirigirnos a lo promulgado en esta última ley y aplicar los remedios que se conceden en caso de incurrir en cesantías ilegales.
Al examinar el mencionado estatuto y su jurisprudencia interpretativa, nos enfrentamos ante la innegable realidad de que consecuentemente hemos reconocido que procede ordenar la restitución al puesto o a un puesto similar, cuando nos topamos con una cesantía ilegal. Asimismo, procede ordenar el pago de los salarios dejados de percibir por el empleado, desde la fecha de la efectividad de la destitución, y la concesión de todos los beneficios marginales a que este hubiese tenido derecho.
Al determinar la ilegalidad de las cesantías, el Tribunal de Apelaciones resolvió conforme a nuestros pronunciamientos jurisprudenciales y concedió a los empleados cesanteados la totalidad de los remedios que el legislador expresamente dispuso en el estatuto aplicable. Es decir, ordenó la reinstalación de los empleados, el pago de los salarios dejados de percibir por el empleado durante el periodo de la cesantía ilegal y la concesión de todos los beneficios a los cuales tenía derecho. El foro intermedio no erró al conceder estos remedios. Entendemos que los cesanteados son acreedores de estos; esto, como consecuencia de las actuaciones ilícitas incurridas por el Departamento. Resolvemos que el Tribunal de Apelaciones no incurrió en el tercer error señalado. Por consiguiente, los recurridos *72 tienen derecho a ser reinstalados en sus puestos o en puestos análogos en la eventualidad de que sus puestos dejaran de existir por motivo de la privatización de las facilidades de salud.
Esta realidad jurídica no puede ser derrotada por consideraciones de política pública basadas en que la aprobación de la Ley Núm. 190 significó que el Departamento de Salud abandonó totalmente su función tradicional de proveedor de servicios, para convertirse únicamente en agente fiscalizador, evaluador y regulador de los sistemas de salud. De hecho, esa premisa no es correcta. Basta con tomar conocimiento para percatarse de que el Departamento de Salud cuenta con un sinnúmero de unidades operacionales(13) que trascienden la función única de fiscalización que se pretendió promover bajo la Ley Núm. 190. Recordemos que al amparo de la ley que derogó a la AFASS se le dio al Departamento la facultad de realizar cambios organizacionales internos para que, entre otras acciones, pudiera consolidar las facultades y obligaciones de la AFASS, crear nuevas unidades organizacionales y transferir personal de la AFASS al Departamento. Por lo tanto, no nos persuade el argumento del Departamento de que eliminada la AFASS, ya no existe posibilidad alguna de transferencias.
Así las cosas, en reconocimiento de los remedios que por derecho les corresponden, reiteramos que procede la reinstalación de los cesanteados ilegalmente. Entendemos que el Departamento de Salud cuenta con facilidades y unidades para reinstalarlos. En consecuencia, los cesanteados pueden ser reubicados en alguna de las unidades operacio *73 nales que en la actualidad posee el Departamento de Salud. Independientemente de ello, este es el remedio que expresamente el legislador contempló, unido al pago de los salarios dejados de percibir y la concesión de todos los beneficios marginales.
La determinación de conceder la reinstalación a los cesanteados se fundamenta, además, en nuestros pronunciamientos previos. Conforme a lo discutido, esta Curia ha actuado con anterioridad ante el asunto de cesantías ilegales, concediendo la reinstalación como parte de los remedios. Basta con examinar nuestro proceder ante controversias similares para percatarnos que la orden de reinstalación siempre ha estado presente como parte de los remedios concedidos. Nuestros pronunciamientos más recientes afirman que los remedios provistos por la Sec. 7.17 son de naturaleza reparadora o remedial y van dirigidos a “restituir al empleado afectado a la misma posición que ocuparía de no haberse incurrido en la conducta ilegal”. (Enfasis suplido). Hernández v. Mun. de Aguadilla, supra, pág. 209.
Nuestra determinación de conceder la totalidad de los remedios provistos en la Sec. 7.17 también encuentra apoyo en los principios cardinales de hermenéutica expuestos y analizados a la luz del propósito legislativo de la Ley Núm. 5. Ante este escenario, reiteramos que es menester dirigirnos al historial legislativo de la Ley Núm. 5 para percatarnos de que el legislador no definió, distinguió ni estableció la diferencia entre “cesantías” y “destituciones”. Tampoco el legislador incluyó una disposición o enmienda que estableciera que por medio de una ley posterior se podrían definir estos conceptos y precisar la diferencia entre ellos. No podemos apoyar el argumento de una supuesta “enmienda tácita” a la Ley Núm. 5, provocada por una ley aprobada 29 años más tarde, para sustentar una diferencia entre cesantías y destituciones que no existía al momento de suscitarse los hechos ante nuestra consideración.
*74 Sin duda, una interpretación semántica e intento de analogía entre los aludidos dos conceptos daría al traste con el reconocimiento que consecuentemente este Tribunal ha realizado referente al derecho de reinstalación de un empleado cesanteado ilegalmente. No puedo avalar el contrasentido de que un empleado al que se le formulen cargos disciplinarios se encuentre en una mejor posición que un empleado cesanteado, al momento de que ambos prevalezcan ante los tribunales por ser inválida la acción tomada por la acción nominadora. En otras palabras, el despido ilegal es el tronco del árbol que puede contener la rama de la cesantía ilícita o la rama de la destitución ilegal. La Ley Núm. 5 tiene el remedio para cortar de raíz el fruto del despido ilegal, ya sea por la semilla de una cesantía o por la semilla de una destitución inválida. En ambos casos, la mencionada ley provee el remedio de la restitución como consecuencia del despido ilegal.
De igual forma, mucho menos puedo apoyar el echar por la borda todos los precedentes discutidos en esta Opinión. Cónsono con lo anterior, entendemos que en el caso ante nuestra consideración debe prevalecer el propósito legislativo.
VI
Por otra parte, aunque estamos conformes con que se le ordene al Departamento el pago de los haberes dejados de percibir y la concesión de todos los beneficios a los que los cesanteados tienen derecho, no compartimos el criterio de que a esa cuantía se le deben deducir todos los salarios por trabajos obtenidos y realizados durante el periodo de cesantía ilegal, conforme a lo establecido en Hernández v. Mun. de Aguadilla, supra. Nos explicamos.
Resulta claro que no actuaremos contra la prohibición consagrada en el Art. VI, Sec. 10, de nuestra Constitución, LPRA, Tomo 1, que impide que una misma persona ocupe al mismo tiempo dos cargos o empleos en el gobierno y *75 reciba dos sueldos en virtud de esos cargos o empleos. Es decir, estamos conformes con que se deduzca del pago de la sentencia de los empleados públicos cesanteados los salarios devengados en otros trabajos provenientes del sector púbico durante el tiempo en que estuvieron cesanteados ilegalmente. No obstante, entendemos que no procede esa deducción cuando se trata de trabajos provenientes de la esfera privada.
Sabido es que cuando un empleado es separado de su trabajo por actuaciones ilegales de su patrono, con frecuencia se da a la tarea de obtener un trabajo en otro lugar. Esto, como medida reparadora ante los daños que puede suponer la pérdida inesperada de un empleo. Sin duda, es una manera de mitigar los daños.(14) La empresa privada permite esa opción. Entonces, ¿por qué deducir unos salarios que son el medio por el cual el empleado cesanteado ilegalmente tiene la posibilidad de cumplir con sus responsabilidades (personales y familiares) y aminorar los perjuicios causados por una acción ilegal de su patrono? ¿Por qué ensañarse con el empleado que actúa diligentemente y hace un esfuerzo razonable por remediar su situación? ¿Acaso la normativa vigente no fomenta que el empleado cesanteado se cruce de brazos y no busque atemperar los menoscabos sufridos? ¿Acaso esta actitud de falta de diligencia en mitigar los daños no ha sido rechazada constantemente por esta Curia? Para despejar estas interrogantes de umbral, revocaría parcialmente nuestro dictamen en Hernández v. Mun. de Aguadilla, supra. Ello, pues, descontar los salarios devengados del pago de los haberes dejados de percibir por razón de la cesantía ilegal a la que fueron expuestos los empleados, constituye penalizar a quien evita un daño mayor. Así, se premia al que actúa ilegalmente y, peor aún, se atropella a quien vindica su derecho.
*76 Así las cosas, devolvería el caso al foro administrativo correspondiente. Ordenaría a ese foro la celebración de una vista evidenciaría para que se demuestre quiénes de los cesanteados trabajaron en el servicio público durante el periodo de la cesantía ilegal. Ello para que, cónsono con lo que hoy resolvemos, pueda descontarse de la cuantía que tiene que satisfacer el Departamento, los salarios devengados por razón de trabajo en el sector público durante el tiempo de cesantía. En atención al segundo error señalado, en la vista se podrá presentar prueba a fin de conocer quiénes de los cesanteados pasaron a trabajar con la privatizadora adquiriente o no aceptaron el trabajo ofrecido por esta.
VII
De acuerdo con los fundamentos expuestos, confirmaría el dictamen emitido por el Tribunal de Apelaciones que ordenó la reinstalación de los cesanteados, unido a los otros remedios que la legislación aplicable y ahora derogada, ex-presamente contemplaba. Resolver en contrario conlleva la pesada carga de abandonar los principios fundamentales de hermenéutica y nuestros propios pronunciamientos jurisprudenciales. No avalaremos una distinción conceptual a posteriori entre destitución y cesantías porque, además de carecer de un claro soporte legislativo, estatutario o jurisprudencial, carga consigo el nefasto efecto de castigar al que solo procura su sustento y el de los suyos, a la vez que premia al que incurre en prácticas ajenas a la ley. Por ello, estoy obligado a disentir en ese extremo.

 La Junta de Apelaciones del Sistema de Administración de Personal (JA-SAP) fue derogada en virtud de la Ley Núm. 184-2004, conocida como la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico. Se creó, entonces, la Comisión Apelativa del Sistema de Apelación de Recursos Humanos del Servicio Público (CASARH). Posteriormente, al amparo del Plan de Reorganización Núm. 2-2010, se suprimió la CASARH y se creó la Comisión Apelativa del Servicio Público (CASP).

 Ley de Personal del Servicio Público de Puerto Rico, 3 LPRA see. 1301 eí seq.

 Art. 19 de la Ley Núm. 190-1996 (1996 (Parte 1) Leyes de Puerto Rico 1078).

 Art. 6 de la Ley Núm. 5-1993, conocida como la Ley de Reorganización Ejecutiva de 1993.

 Sec. 15 de la Ley Núm. 31-1997 (24 LPRA sec. 3318 (ed. 2002)).

 Sec. 4.6(6) de la Ley Núm. 5-1975 (3 LPRA sec. 1336).

 Sec. 5.18(1) de la Ley Núm. 5-1975 (3 LPRA sec. 1358).

 Sec. 7.17(1) y (2) de la Ley Núm. 5-1975 (3 LPRA sec. 1397).

 Preámbulo del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

 Sec. 9.3(l)(a) del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

 Sec. 9.3(l)(b) del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

 Sec. 9.3(l)(c) del Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Reglamento Núm. 2186.

 Las unidades operacionales que se desglosan en la página electrónica oficial del Departamento de Salud son las siguientes: Centro para víctimas de violación, Comisión de alimentación y nutrición de Puerto Rico, Comisión para la prevención del suicidio, División de prevención de enfermedades de transmisión sexual, Oficina de preparación y coordinación de respuesta en salud pública, Programa madres, niños y adolescentes, Laboratorio de salud pública, Oficina de epidemiología, Programa de tuberculosis, Programa de vacunación, Oficina de salud primaria, Programa WIC, y Proyecto asma de Puerto Rico, entre otras.

 La doctrina de mitigación de daños postula el deber que tiene una persona que sufre perjuicios de adoptar aquellas medidas razonables pertinentes y que están a su alcance tendentes a reducir el monto de los mismos. Véanse: Fresh-O-Baking Co. v. Molinos de PR, 103 DPR 509(1975); Odriozola v. S. Cosmetic Dist. Corp., 116 DPR 485 (1985).