EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Andrea Hernández Feliciano<br><br>Peticionaria<br><br>v.<br><br>Municipio de Quebradillas<br><br>Recurrido | Certiorari<br><br>2023 TSPR 6<br><br>211 DPR ___ |

Número del Caso:  CC-2022-305


Fecha:  20 de enero de 2023


Tribunal de Apelaciones:

	Panel II


Abogados de la parte peticionaria:

	Lcda. Nora Cruz Molina
	Lcdo. Jesús Antonio Rodríguez Urbano


Abogado de la parte recurrida:

	Lcdo. Michael Rivera Irizarry


Materia:  Derecho Laboral: La cuantía por concepto de salarios y haberes dejados de percibir por una empleada municipal durante el periodo de su destitución no está sujeta al límite de responsabilidad que establecía la Ley de Municipios Autónomos de Puerto Rico para las reclamaciones de daños y perjuicios.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Andrea Hernández Feliciano<br><br>Peticionaria<br><br>v.<br><br>Municipio de Quebradillas<br><br>Recurrido | CC-2022-305 | *Certiorari* |
|---|---|---|

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 20 de enero de 2023.

La controversia que debemos atender se circunscribe a determinar si el remedio concedido por la Comisión Apelativa de Servicio Público (CASP) sobre el pago de salarios y haberes dejados de percibir por una empleada municipal en el servicio de carrera durante el periodo de su destitución está sujeto al límite de responsabilidad de $75,000 dispuesto en el Art. 15.004 de la Ley Núm. 81 de 30 de agosto de 1991, conocida como Ley de Municipios Autónomos de Puerto Rico, 21 LPRA ant. sec. 4704 (Ley de Municipios Autónomos),[1] para las reclamaciones por daños y perjuicios en contra de los municipios.

---

[1] Esta ley fue derogada por la Ley Núm. 107-2020, conocida como el Código Municipal de Puerto Rico, 21 LPRA sec. 7001 *et seq*. (Código Municipal). En particular, el Art. 1.052 del Código Municipal, 21 LPRA sec. 7083, tiene un lenguaje idéntico al Art. 15.004 de la ley anterior. No obstante, debido a que los hechos de la presente controversia ocurrieron en el 2009, nos referiremos a las disposiciones de la Ley Núm. 81 de 30 de agosto de 1991, conocida como Ley de Municipios Autónomos de Puerto Rico, 21 LPRA ant. sec. 4704 (Ley de Municipios Autónomos).

Adelantamos que resolvemos en la negativa. Por consiguiente, erró el Tribunal de Apelaciones al modificar una *Resolución* emitida por la CASP a los fines de sujetar la cuantía que le correspondería a la empleada municipal por el pago de salarios y haberes dejados de percibir durante el periodo de su destitución al límite de responsabilidad de $75,000 dispuesto para las reclamaciones por daños y perjuicios en contra de los municipios. Veamos.

## I

Allá para el 15 de septiembre de 1999, la Sra. Andrea Hernández Feliciano (señora Hernández Feliciano o peticionaria) tenía un nombramiento de empleo irregular como empleada de mantenimiento en el Municipio de Quebradillas (Municipio). Dos meses después, su estatus de empleo cambió a un nombramiento transitorio como empleada de mantenimiento; dicho estatus transitorio lo mantuvo hasta el 18 de agosto de 2004. Al día siguiente, recibió un nombramiento regular como Conserje, adscrita a Servicios Generales en la Casa Alcaldía del mencionado Municipio. El 9 de enero de 2008, la peticionaria comenzó a trabajar -en destaque- en el Cuartel de la Policía Municipal, la Oficina Municipal para el Manejo de Emergencias y Desastres, y la Oficina del Programa de Reciclaje. Más adelante, el 28 de enero de 2008,[2] fue reasignada a trabajar como Conserje en

---

[2] Valga mencionar que en la *Sentencia* emitida por el Tribunal de Apelaciones el 31 de marzo de 2022 se indica que a la Sra. Andrea Hernández Feliciano (señora Hernández Feliciano o peticionaria) "[d]esde el 28 de agosto de 2003 se le asignó a trabajar en el Centro de

el Centro de Servicios a Personas de Edad Avanzada (Centro) en el Municipio.

El 4 de marzo de 2009, la señora Hernández Feliciano acudió a la oficina de la Sra. Margarita Feliciano Rendón (señora Feliciano Rendón), quien fungía como Auxiliar en Sistemas de Oficina en el Centro, para preguntarle a qué tipo de licencia se le estaban cargando los días en los que se ausentaba. A ésto, la señora Feliciano Rendón le contestó que cuando no llamaba el mismo día para informar el motivo de su ausencia, se le descontaba de la licencia regular de vacaciones. Entonces, la peticionaria reaccionó molesta y expresó que las ausencias se las tenía que cargar a lo que a ella "le diera la gana".**3** Después de esa conversación, la señora Hernández Feliciano salió molesta de la oficina de la señora Feliciano Rendón y en el pasillo manifestó -en voz alta y delante de empleados y participantes del Centro- que "las secretarias del Centro no servían para nada".**4**

Ante el mencionado incidente, el Sr. José A. Ríos Escoriaza (señor Ríos Escoriaza), quien dirigía el Centro, se reunió con ambas empleadas para conversar sobre lo ocurrido. Al comenzar la reunión, la peticionaria estaba alterada y expresó que "estaba loca por largarse pa[']l

---

Envejecientes Wilfredo Iglesias Guzmán (Centro)". No obstante, es importante aclarar que fue a partir del 28 de enero de 2008 que la señora Hernández Feliciano fue asignada a trabajar en el Centro. Refiérase al *Informe del Oficial Examinador de la CASP*, Apéndice de la Petición de *certiorari*, pág. 36.

**3** *Carta de intención de destitución*, Apéndice de la Petición de *certiorari*, pág. 57.

**4** Íd.

carajo y que no soportaba estar en el Centro".[5] Además, indicó que "no le importaba un carajo para d[ó]nde la trasladaran, que… s[ó]lo estaba loca por largarse pa[']l carajo",[6] luego de lo cual salió de la oficina -sin que hubiese finalizado la reunión- y gritó por el pasillo que "se quería ir pa[']l carajo".[7]

Más adelante, el 19 de marzo de 2009, el Alcalde Interino del Municipio le envió una carta a la señora Hernández Feliciano, en la cual le manifestó que se proponía imponerle una medida disciplinaria que podía conllevar desde una suspensión de empleo y sueldo hasta una destitución del servicio público municipal.  En particular, se le imputó haber infringido los Arts. 11.011 y 11.012 de la Ley de Municipios Autónomos, *supra*, 21 LPRA ant. secs. 4561 y 4562.[8]

---

[5]  *Carta de intención de destitución*, Apéndice de la Petición de *certiorari*, pág. 57.

[6]  Íd.

[7]  Íd.

[8]  A manera de referencia, estos artículos de la Ley de Municipios Autónomos, *supra*, son equivalentes a los Arts. 2.052 y 2.053 del vigente Código Municipal, 21 LPRA secs. 7241 y 7242.

En lo pertinente, y según incluidos en la *Carta de intención de destitución* dirigida a la señora Hernández Feliciano, los incisos señalados por la autoridad nominadora municipal en relación con el Art. 11.011 de la Ley de Municipios Autónomos, *supra*, 21 LPRA ant. sec. 4561, establecían lo siguiente:

"Además de los otros que puedan establecerse por ley, ordenanza o reglamentos, todos los funcionarios y empleados municipales, independientemente del servicio a que pertenezcan o del estado legal que ostenten, tendrán los deberes y obligaciones que a continuación se disponen:

(a)  Los funcionarios y empleados municipales deberán:

.    .    .    .    .    .    .    .

(2) Observar normas de comportamiento correcto, cortés y respetuoso en sus relaciones con sus supervisores, compañeros de trabajo y ciudadanos.

También se le imputó haber cometido las faltas 7, 26, 30, 34, 46, 49, 57, 58, 76 y 84, según dispuestas en el Art. X del Manual de Conducta y Procedimientos Disciplinarios para los(as) Empleados(as) y Funcionarios(as) del Municipio de

---

(3) Realizar eficientemente y con diligencia las tareas y funciones asignadas a su puesto y otras compatibles con éstas que se le asignen.

.    .    .    .    .    .    .    .

(8) Cumplir las disposiciones de este subtítulo y las ordenanzas y las reglas y órdenes adoptadas en virtud de la misma.

(9) Cumplir las normas de conducta ética y moral establecidas en las secs. 1801 *et seq*. del Título 3, conocidas como "Ley de [É]tica Gubernamental [de Puerto Rico]" y cualquier otra norma establecida por la Oficina de Ética Gubernamental de Puerto Rico, en virtud de dichas secciones.

(b) Los funcionarios o empleados municipales, independientemente del servicio a que pertenezcan o del estado legal que ostenten, estarán sujetos a las prohibiciones establecidas en las secs. 1821 *et seq*. del Título 3, y estarán sujetos a las siguientes prohibiciones:

(1) No podrán observar conducta incorrecta o lesiva al buen nombre del municipio o del Gobierno [de Puerto Rico].

(2) No incurrirán en prevaricación, soborno, o conducta inmoral.

.    .    .    .    .    .    .    .

(6) No faltarán a los deberes y obligaciones establecidas en este subtítulo o en los reglamentos que se adopten en virtud del mismo".

Por su parte, y en lo pertinente, el Art. 11.012 de la Ley de Municipios Autónomos, *supra*, 21 LPRA ant. sec. 4562, disponía lo siguiente:

"Cuando la conducta de un empleado no se ajuste a las normas establecidas, la autoridad nominadora municipal impondrá la acción disciplinaria que corresponda. Entre otras medidas se podrán considerar la amonestación verbal, las reprimendas escritas, las suspensiones de empleo y sueldo, y las destituciones". Véase *Carta de intención de destitución*, Apéndice de la Petición de *certiorari*, págs. 57-58.

Quebradillas (Manual).**9**  Además, se le citó a una vista administrativa informal para el 31 de marzo de 2009.

Así las cosas, la vista se celebró ante un Oficial Examinador en la fecha pautada y éste rindió su Informe el 27 de abril de 2009.  Específicamente, recomendó que se confirmaran las faltas imputadas y, en consecuencia, se destituyera a la peticionaria.  Evaluado dicho Informe, el 29 de abril de 2009 el Alcalde del Municipio -como autoridad

---

**9**   Según la *Carta de intención de destitución*, el Municipio imputó a la señora Hernández Feliciano las siguientes faltas:

"Falta Núm. 7: Interferir deliberadamente con otros(as) empleados(as) para impedir o limitar el trabajo de otros(as)

Falta Núm. 26: No cumplir con las normas de conducta ética y moral establecidas en la Ley de [É]tica Gubernamental y por la Oficina de [É]tica [Gubernamental de Puerto Rico]

Falta Núm. 30: Incurrir en prevaricación, soborno o conducta inmoral

Falta Núm. 34: No observar normas de comportamiento correcto, cortés y respetuoso con supervisores(as), compañeros(as) o ciudadanos(as)

Falta Núm. 46: Conducta incorrecta dentro o fuera del trabajo, de naturaleza tal que afecte el buen nombre, refleje descrédito o ponga en dificultad al Municipio o Gobierno [de Puerto Rico]

Falta Núm. 49: Cometer o provocar agresión o desorden dentro de las propiedades del Municipio (Se tomará en consideración si es o no en horas laborables y cómo se afectan adversamente la moral, la producción y/o la disciplina.)

Falta Núm. 57: Realizar un acto o usar lenguaje amenazante, indecente y/u obsceno

Falta Núm. 58: Incurrir en conducta desordenada y/o comentarios utilizando palabras soeces y/o bromas pesadas

Falta Núm. 76: No cumplir con las normas establecidas mediante leyes, reglamentos, órdenes administrativas y ordenanzas municipales

Falta Núm. 84: Violación a otros deberes y asignaciones establecidas en ley o reglamentos no especificadas en este Manual que resulten incompatibles con sus funciones y/o el servicio público municipal".  Véase *Carta de intención de destitución*, Apéndice de la Petición de *certiorari*, págs. 58-59.

nominadora- envió una carta a la señora Hernández Feliciano para notificarle su destitución del puesto que ocupaba como Conserje en el Centro, efectivo al recibo de la comunicación.

Inconforme con la decisión del Alcalde, el 14 de mayo de 2009 la peticionaria presentó una *Apelación* ante la extinta Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (Comisión). En su recurso, la señora Hernández Feliciano impugnó la sanción impuesta y solicitó la reinstalación a su puesto, la restitución de cualquier día y sueldo suspendido, así como los haberes dejados de percibir. Por su parte, el Municipio presentó su *Contestación a la Apelación y defensas afirmativas* el 6 de julio de 2009. En resumen, planteó que el proceso de destitución se realizó de acuerdo con la Ley de Municipios Autónomos, *supra*, y el Manual.

Finalmente, el 2 de junio de 2010 se celebró una vista pública ante un Oficial Examinador de la Comisión. En esa ocasión, el Municipio -representado por el Lcdo. Fernando L. Torres Ramírez- presentó como testigos a la Sra. Noemí Cordero Vera, Directora de Recursos Humanos del Municipio; al señor Ríos Escoriaza, Director del Centro, y a la señora Feliciano Rendón, Auxiliar en Sistemas de Oficina adscrita al Centro. Mientras, la peticionaria compareció, testificó y fue representada por la Lcda. Nora Cruz Molina.

Luego de más de once (11) años, el Oficial Examinador de la CASP presentó su Informe el 20 de octubre de 2021.**10** En el mismo concluyó lo siguiente:

> En el caso de autos, **el [Municipio] optó por aplicar como sanción la destitución como primera infracción. Entendemos que dicha acción fue desmesurada ante la infracción cometida.** Según se desprende de la prueba desfilada, cuando la [señora Hernández Feliciano] cuestionó a la [señora Feliciano Rendón] sobre cómo le había cargado los días que se había ausentado, se encontraba en una actitud destemplada y[,] posteriormente, profirió palabras soeces, en varias ocasiones, ante ésta y el [señor] Ríos Escoriaza. Sin embargo, la expresión de la [señora Hernández Feliciano], "me voy para el carajo", no constituye una ofensa directa en contra de la [señora] Feliciano Rendón y [el señor] Ríos Escoriaza. Dicha expresión es una reprochable, pero no está dirigida a ofender a una persona particular. La expresión afecta el ambiente de trabajo y lacera la reputación del [Municipio].
>
> Según los hechos estipulados por las partes[,] la [señora Hernández Feliciano] no había sido objeto de ninguna medida disciplinaria previ[o] a su destitución. La imposición de una destitución por los hechos del caso de autos, en ausencia de medidas disciplinarias previas, parece excesiva. **En el caso de autos, el [Municipio] debió aplicar [la] disciplina progresivamente y no la sanción mayor a la [señora Hernández Feliciano] por los hechos en controversia.** (Énfasis suplido). Véase *Informe del Oficial Examinador*, Apéndice del *certiorari*, pág. 41.

En consecuencia, el Oficial Examinador recomendó a la CASP que modificara la medida disciplinaria impuesta a la peticionaria para que fuese una suspensión de empleo y

---

**10** Según surge de la *Resolución* emitida por la CASP el 14 de diciembre de 2021, una vez se realizaron los trámites procesales del caso, el recurso de *Apelación* fue delegado al abogado que emitió el Informe. *Resolución*, Apéndice del *certiorari*, pág. 27.

sueldo de treinta (30) días; se ordenara la reinstalación a su puesto de Conserje y el pago de los haberes dejados de percibir, según lo resuelto en <u>Hernández v. Mun. de Aguadilla</u>, 154 DPR 199 (2001).

Posteriormente, el 14 de diciembre de 2021, la CASP emitió una *Resolución* mediante la cual declaró *Ha Lugar* la *Apelación* presentada por la señora Hernández Feliciano. Específicamente, adoptó las recomendaciones del Oficial Examinador de la CASP y, en consecuencia, dispuso lo siguiente:

1. SE ORDENA al [Municipio] que reinstale y deje sin efecto la medida disciplinaria impuesta a la [señora Hernández Feliciano], consistente en la destitución de su puesto como Conserje en el Municipio de Quebradillas.

2. SE ORDENA al [Municipio] que remueva la carta de la medida disciplinaria (destitución) del expediente de personal de la [señora Hernández Feliciano].

3. SE ORDENA al [Municipio] que modifique la medida disciplinaria impuesta a la [señora Hernández Feliciano] por una suspensión de empleo y sueldo de 30 días.

4. SE ORDENA al [Municipio] que proceda a pagarle a la [señora Hernández Feliciano] los salarios dejados de percibir por el tiempo que estuvo destituida de su puesto. (Citas y énfasis omitidos).

Oportunamente, el Municipio presentó una *Moción de reconsideración a Resolución*. Unos días después, el 13 de enero de 2022, la CASP emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la petición de reconsideración. Inconforme con esa determinación, el 11 de febrero de 2022,

el Municipio presentó un recurso de *Revisión Judicial de Decisión Administrativa* ante el Tribunal de Apelaciones.

Así las cosas, el 31 de marzo de 2022, el foro apelativo intermedio emitió una *Sentencia* mediante la cual modificó la decisión recurrida y, así modificada, confirmó la *Resolución* emitida por la CASP.[11] En lo pertinente, el Tribunal de Apelaciones puntualizó lo siguiente:

> [E]l Art. 15.004 de la Ley de Municipios Autónomos limita la cantidad por la cual la autoridad municipal responderá a setenta y cinco mil dólares [$75,000] por cada causa de acción. **En el presente caso, el [f]oro administrativo ordenó el pago total de los haberes dejado[s] de percibir sin tomar en consideración el límite legal.** La controversia del presente caso data del 2009, han pasado once (11) años desde iniciado. **Si bien desconocemos la cantidad que deberá pagar el Municipio, la [a]gencia se excedió en sus facultades al ordenar el pago total de los haberes dejados de percibir durante este per[i]odo sin tomar en consideración el límite legal vigente en aquellos casos donde el Estado o sus Municipios son partes en la controversia.** En vista de ello, procede modificar el dictamen recurrido, a los efectos de que, una vez descontado por el patrono los haberes y sueldos devengados durante el per[i]odo que estuvo cesanteada la [señora Hernández Feliciano], de ser necesario, se deberá ajustar la cuantía concedida hasta el máximo de [$75,000] según dispone nuestro ordenamiento jurídico.
>
> .   .   .   .   .   .   .   .
>
> Por los fundamentos antes expuestos, se modifica la Resolución recurrida a los únicos efectos de que en su ejecución y satisfacción, el [Municipio] pueda descontar a la [señora Hernández Feliciano] todos los haberes y sueldos devengados, si alguno, durante el per[i]odo en que estuvo cesanteada. **Y de ser necesario, ajustar la cuantía concedida a los**

---

[11] El archivo en autos de copia de la *Sentencia* fue el 1 de abril de 2022.

> **fines de reducir la misma al máximo de [$75,000] de conformidad con el límite legal vigente.** Modificada a esos efectos, se confirma la Resolución recurrida. (Cita y énfasis omitidos, y negrillas suplidas). Véase *Sentencia*, Apéndice del *certiorari*, págs. 104-105.

En desacuerdo con lo resuelto por el foro apelativo intermedio, la peticionaria presentó su *Solicitud de reconsideración* el 13 de abril de 2022. Resaltó que el pago ordenado por la CASP fue por concepto de salarios y haberes dejados de percibir durante el periodo de su destitución y "[no] se trata de una compensación por daños y perjuicios causados a [ella]".[12] Manifestó, además, que debía confirmarse la *Resolución* de la CASP en su totalidad, ya que "modificar la misma permitiendo que se ajuste la cuantía concedida hasta un máxim[o] de setenta y cinco mil [$75,000], constituiría una incautación ("taking") por fíat judicial".[13] Añadió que dicho proceder no sólo sería contrario a derecho, sino que privaría a la peticionaria de la restitución de sus haberes, luego de haber esperado poco más de once (11) años por un remedio.[14]

Más adelante, el 21 de abril de 2022, el Tribunal de Apelaciones declaró *No Ha Lugar* la *Solicitud de reconsideración*.[15] Inconforme con esa determinación, el

---

[12] *Solicitud de reconsideración*, Apéndice del *certiorari*, pág. 115.

[13] Íd., pág. 116.

[14] Íd.

[15] El archivo en autos de copia de la *Resolución* fue el 22 de abril de 2022.

23 de mayo de 2022, la señora Hernández Feliciano presentó ante este Foro un recurso de *certiorari*, en el que esbozó este único señalamiento de error:

> Erró el Tribunal de Apelaciones al modificar la Resolución Administrativa de la Comisión Apelativa del Servicio Público (CASP) para ajustar los salarios y beneficios marginales dejados de percibir por el tiempo que la peticionaria estuvo destituida de su puesto hasta un máximo de setenta y cinco mil dólares [$75,000].

Así pues, el 24 de junio de 2022 expedimos el auto de *certiorari* solicitado. Como parte del trámite apelativo, la peticionaria presentó su *Alegato* el 2 de agosto de 2022, mientras que el Municipio presentó el suyo el 1 de septiembre de 2022.

Con el beneficio de la comparecencia de ambas partes, procedemos a examinar el derecho aplicable para así atender la controversia ante nuestra consideración.

## II

### A. La Comisión Apelativa del Servicio Público (CASP)

En conformidad con la Ley Núm. 182-2009, conocida como Ley de Reorganización y Modernización de la Rama Ejecutiva de 2009, 3 LPRA ant. sec. 8821 *et seq.*, se desarrolló el Plan de Reorganización Núm. 2 de 26 de julio de 2010 (Plan de Reorganización de la CASP) y mediante éste se estableció la CASP. Con ese plan de reorganización se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP). Beltrán Cintrón *et al.* v. ELA *et al.*, 204 DPR 89, 108 (2020).

La CASP es un organismo cuasijudicial que pertenece a la Rama Ejecutiva y se especializa en asuntos obrero-patronales y del principio de mérito. Específicamente, atiende casos laborales, de administración de recursos humanos y de querellas en relación a los empleados que negocian en virtud de la Ley Núm. 45-1998, según enmendada, conocida como Ley de Relaciones del Trabajo del Servicio Público de Puerto Rico, 3 LPRA sec. 1451 *et seq.*, los empleados públicos cubiertos por la Ley Núm. 8-2017, según enmendada, conocida como Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico, 3 LPRA sec. 1469 *et seq.*, y los empleados municipales cubiertos por la Ley Núm. 107-2020, según enmendada, conocida como el Código Municipal de Puerto Rico, 21 LPRA sec. 7001 *et seq.*, entre otros casos. 3 Ap. XIII, Art. 4.[16]

En lo pertinente, el Art. 8 del Plan de Reorganización de la CASP, 3 LPRA Ap. XIII, Art. 8, establece que entre las facultades, funciones y deberes de la CASP estará:

> (i) Conceder los remedios que estime apropiados y emitir las órdenes que sean necesarias y convenientes conforme a las leyes aplicables. Esto incluye, entre otras, órdenes provisionales o permanentes de cesar y desistir; **órdenes para la reposición de empleados suspendidos o destituidos, con o sin el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a los cuales los empleados hubiesen tenido derecho durante el período de suspensión o destitución;** órdenes imponiendo sanciones económicas o procesales a agencias, funcionarios o representantes

---

[16] Véase http://www.casp.pr.gov/ (última visita, 14 de noviembre de 2022).

legales por incumplimiento o dilación de los procedimientos; y órdenes imponiendo sanciones a agencias, organizaciones sindicales o representantes exclusivos, incluyendo la descertificación de estos últimos. (Énfasis suplido).

Por su parte, en lo que corresponde, el Art. 12 del Plan de Reorganización de la CASP, 3 LPRA Ap. XIII, Art. 12, dispone lo siguiente:

La Comisión tendrá jurisdicción exclusiva sobre las apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios en los casos y por las personas que se enumeran a continuación:

a) Cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por las secs. 1451 *et seq.* de este título, conocidas como la "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, las secs. 4001 *et seq.* del Título 21, conocidas como la "Ley de Municipios Autónomos", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable.

B. <u>La revisión judicial sobre las decisiones emitidas por las agencias administrativas</u>

En nuestra jurisdicción, las decisiones, órdenes y resoluciones finales emitidas por organismos o agencias administrativas están sujetas al proceso de revisión judicial ante el Tribunal de Apelaciones. Art. 4.006(c) de la Ley Núm. 201-2003, según enmendada, conocida como Ley de la Judicatura de 2003, 4 LPRA sec. 24y. En conformidad con esto, la Sec. 4.6 de la Ley Núm. 38-2017, según enmendada,

conocida como Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), 3 LPRA sec. 9676, establece expresamente sobre la revisión judicial de las mencionadas decisiones.[17] En particular, el objetivo principal de la revisión judicial se enfoca en asegurar que las agencias administrativas actúen conforme a las facultades concedidas por ley. OEG v. Martínez Giraud, 2022 TSPR 93, 210 DPR ____ (2022); Pérez López v. Depto. Corrección, 2022 TSPR 10, 208 DPR ____ (2022). Esto es, "asegurarse de que las agencias actúan dentro del marco del poder delegado y consistente con la política legislativa". D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, pág. 669.

Constituye una norma reiterada el que los tribunales apelativos debemos conceder deferencia a las determinaciones de las agencias administrativas, por razón de la experiencia y el conocimiento especializado que éstas poseen sobre los asuntos que se les han delegado. Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018); Torres Rivera v. Policía de PR, 196 DPR 606, 626 (2016). Al respecto, hemos resaltado que estas determinaciones "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas". Rolón Martínez v. Supte.

---

[17] De igual forma se dispone en la Regla 56 del Reglamento del Tribunal de Apelaciones, según enmendado, 4 LPRA Ap. XXII-B.

Policía, *supra*, pág. 35; Díaz v. Fideicomiso Soc. y Autogestión, 188 DPR 32, 60 (2013).

Asimismo, este Foro ha manifestado que la deferencia a la determinación de una agencia administrativa cederá cuando: (1) no está basada en evidencia sustancial; (2) el ente administrativo erró al aplicar o interpretar las leyes o los reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó de forma arbitraria, irrazonable o ilegal, realizando determinaciones carentes de una base racional, o (4) cuando la actuación administrativa lesiona derechos constitucionales fundamentales. Torres Rivera v. Policía de PR, *supra*, pág. 628; IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712, 744-745 (2012).

A tono con la deferencia, y la presunción de legalidad y corrección que cobija las decisiones e interpretaciones de una agencia administrativa, el principio rector en la revisión judicial de las mismas será el criterio de la razonabilidad en la actuación de la agencia recurrida. Torres Rivera v. Policía de PR, *supra*, pág. 626; Díaz. v. Fideicomiso Soc. y Autogestión, *supra*, pág. 62. Así pues, la revisión judicial se limitará a determinar si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituye un abuso de discreción. Íd.; Batista, Nobbe v. Jta. Directores, 185 DPR 206, 216 (2012).

Para esta encomienda de la revisión judicial, la Sec. 4.5 de la LPAU, 3 LPRA sec. 9675, dispone que los tribunales se ceñirán a evaluar estos tres (3) aspectos: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hecho están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia. Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 839-840 (2021); Capó Cruz v. Jta. Planificación et al., 204 DPR 581, 591 (2020); Torres Rivera v. Policía de PR, supra, págs. 626-627.

Como vemos, las determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo. Capó Cruz v. Jta. Planificación et al., supra, pág. 591; Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 127 (2019). Mientras, la deferencia antes mencionada no se extiende de manera automática a las conclusiones de derecho emitidas por la agencia, ya que éstas serán revisables en todos sus aspectos por el tribunal. Véanse Sec. 4.5 de la LPAU, supra; ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020). Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno. Batista, Nobbe v. Jta. Directores, supra, pág. 217. Claro está, la revisión judicial no es equivalente a una sustitución automática del criterio e interpretación del ente administrativo. Capó Cruz v. Jta. Planificación et al., supra, pág. 591. Por el contrario,

"los tribunales revisores descartarán el criterio de los entes administrativos cuando 'no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo'". Íd.; Rolón Martínez v. Supte. Policía, pág. 36.

En el ejercicio de nuestra función revisora, los foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa. OCS v. Point Guard Ins., 205 DPR 1005, 1028 (2020).

C. El remedio de la restitución (reinstalación) en el empleo y el pago de los salarios y haberes dejados de percibir durante el periodo de destitución

En Estrella v. Mun. de Luquillo, 113 DPR 617, 619 (1982), manifestamos que "[e]l remedio de [la] reposición [en el empleo] con el pago de los sueldos dejados de percibir es para reivindicar un despido ilegal". Allí añadimos que tal pago "[s]e retrotrae a la fecha en que se realizó dicho despido y se satisface en virtud de los salarios, tal y como si hubiesen sido devengados sin ninguna interrupción". Íd. Esto responde a que el propósito de este tipo de legislación es uno reparador y busca restituir al empleado afectado a la misma posición que hubiese estado de no haber ocurrido el acto ilegal, en este caso el despido o destitución. Zambrana García v. ELA et al., 204 DPR 328, 336 (2020).

Al respecto, también hemos expresado que "en aquellas situaciones en que un estatuto autori[ce] expresamente la

reposición [al empleo] con abono de la paga que el [empleado] hubiese devengado, el patrono podrá deducir cualquier suma que el [empleado] perjudicado hubiese percibido por su trabajo con otros patronos". (Énfasis omitido). Hernández v. Mun. de Aguadilla, 154 DPR 199, 205 (2001). Así pues, cuando un empleado público despedido ilegalmente haya recibido ingresos por trabajos obtenidos y realizados durante el periodo que estuvo cesanteado, procede que el patrono descuente tales ingresos de la cuantía a otorgarse por salarios dejados de percibir, independientemente de si éstos provienen de fuentes gubernamentales o privadas. Íd., págs. 209-210. Esto es así porque, de lo contrario, el empleado cesanteado recibiría una doble compensación, lo que derrotaría el propósito reparador de la legislación y, a la vez, violentaría la prohibición expresa sobre la doble compensación a los empleados públicos.[18] Zambrana García v. ELA *et al.*, *supra*, pág. 337.

D. La Ley de Municipios Autónomos

El Art. 11.012 de la Ley de Municipios Autónomos, *supra*, 21 LPRA ant. sec. 4562, autoriza a los municipios a imponer las acciones disciplinarias necesarias para salvaguardar el buen orden y la sana administración pública. En lo pertinente, el mencionado artículo dispone lo siguiente:

> Cuando la conducta de un empleado no se ajuste a las normas establecidas, la autoridad nominadora municipal impondrá la acción disciplinaria que corresponda. Entre otras medidas se podrán considerar la[s]

---

[18] Véase Art. VI, Sec. 10, Const. PR, LPRA, Tomo 1.

amonestaci[ones] verbal[es], las reprimendas escritas, las suspensiones de empleo y sueldo, y las destituciones.[19]

En cuanto a los casos de restitución en el empleo y el pago de salarios y haberes dejados de percibir, el inciso (e) del Art. 11.023 de la Ley de Municipios Autónomos, *supra*, 21 LPRA ant. sec. 4572, establece que:

> (e) **En los casos que el empleado haya sido destituido o suspendido de empleo y sueldo**, cuando la Junta de Apelaciones del Sistema de Administración de Personal o un tribunal con jurisdicción **ordene la restitución al puesto o a un puesto similar al que ocupaba y se complete el proceso de retribución, el pago parcial o total de salarios y se concedan los beneficios marginales dejados de percibir por éste desde la fecha de la efectividad de la destitución o de la suspensión de empleo y sueldo**, se eliminará del expediente de personal del empleado toda referencia a la destitución o a la suspensión de empleo y sueldo de la que fue objeto. En los casos de destitución también se notificará a la Oficina Central de Administración de Personal para que allí se elimine cualquier referencia a la destitución. (Énfasis suplido).[20]

Por su parte, en cuanto a los límites de responsabilidad por daños y perjuicios, el Art. 15.004 de la Ley de Municipios Autónomos, *supra*, exponía -en lo pertinente- lo siguiente:

> Las reclamaciones contra los municipios por daños y perjuicios a la persona o la propiedad, causados por culpa o negligencia de los municipios, no podrán exceder de la cantidad de setenta y cinco mil dólares ($75,000). Cuando por una misma actuación u omisión se causen daños y perjuicios a más de una persona, o cuando sean varias las causas

---

[19]  Este artículo es equivalente al Art. 2.053 del Código Municipal, *supra*, 21 LPRA sec. 7242.

[20]  Este artículo es equivalente al Art. 2.060 del Código Municipal, *supra*, 21 LPRA sec. 7249.

de acción a que tenga derecho un solo perjudicado, la indemnización no podrá exceder la suma de ciento cincuenta mil dólares ($150,000).[21]

Veamos, pues, los planteamientos esbozados por ambas partes en sus respectivos alegatos.

## III

Por un lado, la señora Hernández Feliciano planteó que el Tribunal de Apelaciones erró al modificar la *Resolución* emitida por la CASP el 14 de diciembre de 2021 y que al así hacerlo actuó contrario a derecho debido a que excedió los límites de la revisión judicial. En ese sentido, la peticionaria argumentó que dicha actuación del foro apelativo intermedio -a los fines de limitar la cuantía de los salarios y haberes dejados de percibir por la peticionaria durante el periodo de su destitución- es contraria a derecho, pues la cuantía en controversia no se trata de una compensación en daños y perjuicios y, por consiguiente, no procedería ajustar la misma al límite de $75,000 dispuesto en el Art. 15.004 de la Ley de Municipios Autónomos, *supra*.

Por su parte, en su *Alegato*, el Municipio argumentó que no debemos perder de perspectiva que este pleito comenzó en mayo de 2009 ante el foro administrativo y, luego de que se celebrara la vista pública en junio de 2010, estuvo en espera de una determinación por más de once (11) años; que la CASP

---

[21] Este artículo es equivalente al Art. 1.052 del Código Municipal, *supra*, 21 LPRA sec. 7083.

fue el ente responsable por la dilación en los procedimientos; que la "dilación injustificada colocó al Municipio en una posición en detrimento de los recursos del erario disponibles".[22] Ante lo cual, el Municipio reiteró que la cuantía sobre salarios y haberes dejados de percibir por la peticionaria durante el periodo de su destitución "no puede exceder el tope que establecía para entonces la [Ley de Municipios Autónomos]".[23] Sobre ésto, expresó que "[el Municipio] debe exponerse a responder hasta un máximo de [$75,000] al momento de pagar cualquier compensación o restitución de salarios según fue ordenada por la CASP y modificada por el Tribunal de Apelaciones".[24]

A raíz del marco legal expuesto, procedemos a disponer del caso ante nuestra consideración.

**IV**

Luego de evaluar los argumentos esbozados por ambas partes en sus alegatos, y tras examinar el expediente ante nuestra consideración, resolvemos que tiene razón la peticionaria. Veamos.

El Tribunal de Apelaciones erróneamente modificó la decisión de la CASP. Hizo esto pues aplicó incorrectamente el límite de responsabilidad para las reclamaciones por daños y perjuicios en contra de los municipios con el fin de limitar el pago de los salarios y haberes dejados de

---

[22] *Alegato de la parte recurrida Municipio de Quebradillas,* pág. 1.

[23] Íd.

[24] Íd., pág. 17.

percibir por la señora Hernández Feliciano durante el periodo de su destitución. Al así actuar, el foro apelativo intermedio equiparó erróneamente el remedio del pago de los salarios y haberes dejados de percibir con el remedio ordinario de daños y perjuicios.

Es importante resaltar que se trata de dos (2) asuntos distintos: un asunto es el límite establecido por ley para las reclamaciones por daños y perjuicios presentadas en contra de los municipios y otro asunto es el remedio que puede concederse por concepto del pago de salarios y haberes dejados de percibir por un empleado durante el tiempo que estuvo destituido. El hecho de que el remedio del pago de salarios y haberes dejados de percibir durante el periodo de una destitución sea de carácter reparador y busque compensar al empleado que se vio afectado como resultado de la actuación ilegal del patrono, claramente no lo equipara al remedio de daños y perjuicios. Esto es, el pago de salarios y haberes dejados de percibir responde directamente a una cantidad de dinero que la peticionaria -en este caso- hubiese devengado de no haber sido por la actuación ilegal del Municipio al destituirla del puesto que ocupaba. En ese sentido, mantener la decisión del foro apelativo intermedio y limitar de esa forma el pago que pudiere recibir la señora Hernández Feliciano constituiría una injusticia y, a la vez, sería refrendar un error inaceptable.

Concluimos, pues, que el remedio concedido por la CASP sobre el pago de salarios y haberes dejados de percibir por

una empleada municipal, en el servicio de carrera, por el periodo de su destitución del puesto que ocupaba **no** está sujeto al límite de responsabilidad de $75,000 dispuesto en el Art. 15.004 de la Ley de Municipios Autónomos, *supra*, para las reclamaciones por daños y perjuicios en contra de los municipios.

De igual manera, el Tribunal de Apelaciones erró al plantear que la CASP en su *Resolución* del 14 de diciembre de 2021 no había ordenado al Municipio a realizar las deducciones correspondientes a aquellos ingresos recibidos por trabajos obtenidos y realizados durante el periodo de la destitución. Así pues, resolvemos que la CASP correctamente ordenó al Municipio -en conformidad con la jurisprudencia- a que de la cuantía a concederse por los salarios y haberes dejados de percibir por la peticionaria durante el periodo de su destitución se descuenten aquellos ingresos recibidos por trabajos obtenidos y realizados durante dicho periodo, independientemente de que esos ingresos provengan de fuentes gubernamentales o privadas.

Evaluado el expediente del caso, concluimos que el Tribunal de Apelaciones erró en su apreciación e interpretación del derecho aplicable y, por consiguiente, al modificar lo ordenado por la CASP en su *Resolución* del 14 de diciembre de 2021. La actuación de la CASP no fue ilegal, arbitraria o irrazonable, pues del expediente no surge que la base para la decisión administrativa fuera irracional o contraria a derecho.

**V**

Por los fundamentos expuestos anteriormente, revocamos la *Sentencia* emitida por el Tribunal de Apelaciones el 31 de marzo de 2022 y, en consecuencia, reinstalamos en su totalidad la *Resolución* dictada por la CASP el 14 de diciembre de 2021.

Se dictará Sentencia en conformidad.


ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Andrea Hernández Feliciano<br><br>Peticionaria<br><br>v.<br><br>Municipio de Quebradillas<br><br>Recurrido | CC-2022-305 | *Certiorari* |

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de enero de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, revocamos la Sentencia del Tribunal de Apelaciones emitida el 31 de marzo de 2022 y reinstalamos en su totalidad la Resolución dictada por la Comisión Apelativa del Servicio Público (CASP) el 14 de diciembre de 2021.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez concurre sin Opinión escrita. El Juez Asociado señor Estrella Martínez no interviene.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo